Patricia M. CAMERON,
Plaintiff–Appellant,

v.

COMMUNITY AID FOR RETARDED CHILDREN, INC. (Keon Center) and William Melville, Defendants–Appellants.

Docket No. 02–7373.

United States Court of Appeals,
Second Circuit.

Argued: Oct. 29, 2002.

Decided: July 8, 2003.

William L. Wood, Jr., Wood & Scher, Scarsdale, NY, for Defendants–Appellees Community Aid for Retarded Children and William Melville.

Before: FEINBERG, JACOBS, SACK, Circuit Judges.

JACOBS, Circuit Judge.

Patricia Cameron sued her employer, Community Aid for Retarded Children, Inc. (known as the "Keon Center") and its executive director, William Melville, alleging that they fired her in violation of the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* (the "ADA"), the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.* (the "ADEA"), and the New York Human Rights Law, N.Y. Exec. Law §§ 292, 296 *et seq.* (McKinney 2001). The United States District Court for the Southern District of New York (Brieant, *J.*) granted summary judgment dismissing Cameron's ADA and ADEA claims against both defendants, and declined to exercise supplemental jurisdiction over the claims asserted under the New York Human Rights Law.

■ On appeal from summary judgment, Cameron challenges only the dismissal of her ADA claim against the Keon Center.[1] We affirm that dismissal because Cameron has failed to establish a *prima facie* case of employment discrimination under the ADA.

**I**

Richard B. Wolf, Poughkeepsie, NY, for Plaintiff–Appellant Patricia Cameron.

The Keon Center is a non-profit organization that provides job training and other

---

1. Cameron's brief refers *passim* to "defendants," but she adduces no argument challenging the district court's conclusion that the claims against defendant William Melville must be dismissed because he is not an employer under the ADA. *See Tomka v. Seiler Corp.,* 66 F.3d 1295, 1317 (2d Cir.1995) (holding analogously that "an employer's agent may not be held individually liable under Title VII"), *abrogated on other grounds by Burlington Indus., Inc. v. Ellerth,* 524 U.S. 742, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998). She has therefore not raised the issue on appeal.

services to developmentally disabled persons. Executive Director Melville hired Cameron in 1984 as part-time manager of the center's thrift shop at a salary of $6,000. She remained continuously employed at the Keon Center until she was fired in November 2000. Melville promoted her several times during the period of her employment. In April 2000, he promoted Cameron to Associate Director at an annual salary of $50,000, a managerial post second in authority to himself. That position required supervision of all staff members and interaction with the Keon Center's clients. Her job therefore entailed interaction with Joan Johnston, a staff member whose child was a client of the center.

Melville was aware that Cameron took medication to treat symptoms of anxiety. Throughout her employment, Cameron was permitted to take time off during the day to receive psychiatric counseling.

Until her promotion to Associate Director, Cameron appears to have enjoyed a flawless employment record. However, on October 3, 2000, Cameron was involved in a shouting match with Johnston, who had proposed administrative changes that Cameron opposed. Melville intervened to quiet the dispute, but over the following days the controversy embroiled other staff members and bubbled up to the Keon Center's Board of Directors. Johnston subsequently resigned, citing Cameron's abusive and intimidating conduct. Cameron suffered an anxiety attack at some point after October 13, 2000, due to increased workplace tensions. On October 17, her psychiatrist, Dr. Knox, informed Melville that she would need a two-week medical leave to recover. On October 26, 2000, the day before she was supposed to return to work, Dr. Knox informed Melville that she would require another week of convalescence, until November 3, 2000. Melville

tried to contact Cameron without success, and left a message with her husband asking that she return to work so that any lingering problems could be worked out. Cameron came back on October 30, 2000.

Upon her return, Cameron testified, Melville was "very, very angry and annoyed at me." (Cameron Dep. Tr., dated Nov. 16, 2001, at 319.) She informed him that, on Dr. Knox's advice, she would be working half days until her anxiety attacks abated. On November 2, 2000, Melville asked her in an angry tone whether she would be on a half-day schedule the following week as well, and she responded that she would follow her psychiatrist's advice. The following day Melville called Cameron into his office and demanded her resignation. She refused, and he fired her.

The reason cited by the Keon Center for her discharge is Melville's conclusion that she lacked the managerial skills needed to serve as his Associate Director. He testified that, to his chagrin, her squabble with a subordinate spiraled into a crisis that ultimately involved the center's board. He also cited information detrimental to Cameron that he learned while investigating the dispute between her and Johnston: that Cameron was abusive to subordinates, that she intimidated them to prevent complaints from reaching Melville, that she was not trusted by her staff, and that she had urged the staff to join her in a bid to unseat Melville as Executive Director. Cameron denies the substance of these reports.

The parties agree that Melville knew that Cameron suffered from anxiety, but they disagree as to whether he knew the extent of her psychiatric problems. Cameron testified that Melville was "uptight" about her mental condition and changed the subject whenever she brought it up. (Cameron Dep. Tr. at 318.) An October 19 letter apparently hand-delivered to Mel-

ville by her husband diagnosed Cameron with "Bipolar Disorder" and "PTSD" (post-traumatic stress disorder). (Letter from Dr. Knox, dated October 19, 2000, at 1.) Melville admits knowing that Cameron experienced anxiety attacks, but denies reading the letter or knowing that she suffered from bi-polarity or any other particular psychiatric condition. Cameron testified that she told Melville that she was bi-polar before October 2000, and that "[h]e didn't seem to care one way or the other." (Cameron Dep. Tr. at 317.)

## II

■ To establish a *prima facie* case of disability discrimination, a plaintiff must show:

(1) his employer is subject to the ADA; (2) he was disabled within the meaning of the ADA; (3) he was otherwise qualified to perform the essential functions of his job, with or without reasonable accommodation; and (4) he suffered [an] adverse employment action because of his disability.

*Giordano v. City of New York,* 274 F.3d 740, 747 (2d Cir.2001) (citation omitted). Cameron is considered "disabled" under the ADA if she is "regarded as" suffering from a physical or mental impairment that "substantially limits one or more of the major life activities," even if she does not actually suffer from such an impairment. 42 U.S.C. § 12102(2)(A) & (C).

■ "We review *de novo* the district court's grant of summary judgment, construing the evidence in the light most favorable to the nonmoving party." *Giordano,* 274 F.3d at 746. Summary judgment is appropriate where the nonmoving party has failed to establish the existence of a genuine dispute of fact as to an essential element of the claim. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). "[P]urely con-

clusory allegations of discrimination, absent any concrete particulars," are insufficient. *Meiri v. Dacon,* 759 F.2d 989, 998 (2d Cir.1985).

The district court concluded that Cameron had failed to meet her *prima facie* burden because she had not established that she was actually disabled or that she was otherwise qualified to be Associate Director. On appeal, Cameron (i) concedes that she is not disabled, but argues that the district court erred in failing to consider whether Melville *regarded* her as disabled within the meaning of the ADA. *See* 42 U.S.C. § 12102(2)(C); *see also Colwell v. Suffolk County Police Dep't,* 158 F.3d 635, 646 (2d Cir.1998) ("It is not enough ... that the employer regarded that individual as somehow disabled; rather, the plaintiff must show that the employer regarded the individual as disabled within the meaning of the ADA.") (emphasis omitted); and (ii) argues that factual disputes exist as to whether she was otherwise qualified. Cameron contends that Melville regarded her as disabled in two ways.

First, relying primarily on the Ninth Circuit's opinion in *McAlindin v. County of San Diego,* 192 F.3d 1226, 1234 (9th Cir.1999) (holding that employee diagnosed with anxiety, panic, and somatoform disorders could be substantially impaired in the major life activity of interacting with others), Cameron argues that she is disabled because Melville regarded her as incapable of "interacting with others," and at the same time demands, as an ADA accommodation, that the Keon Center relieve her of interacting with Johnston, a former employee and step-mother of a client.

This argument raises other questions: [i] whether an inability to interact with others is a disability within the meaning of

the ADA, *compare Soileau v. Guilford of Maine, Inc.*, 105 F.3d 12, 16 (1st Cir.1997) (observing that the "inability to interact with others" comes and goes, "triggered by vicissitudes of life which are normally stressful for ordinary people," and that "[t]o impose legally enforceable duties on an employer based on such an amorphous concept would be problematic") *with McAlindin*, 192 F.3d at 1234 ("Because interacting with others is an essential, regular function, like walking and breathing, it easily falls within the definition of 'major life activity.' "); and [ii] whether the ADA requires accommodation of a disability that the claimant is regarded as having but does not in fact have, *see Weber v. Strippit, Inc.*, 186 F.3d 907, 917 (8th Cir.1999) (holding that employee who is "regarded as" disabled is not entitled to accommodations under the ADA); *Deane v. Pocono Med. Ctr.*, 142 F.3d 138, 148 n. 12 (3d Cir.1998) (en banc) (identifying but declining to decide the issue); *Katz v. City Metal Co.*, 87 F.3d 26 (1st Cir.1996) (jury to decide whether "regarded as" plaintiff could have performed with reasonable accommodation).

■ We need not decide these questions, however, because we agree with the district court that several undisputed facts establish that Cameron was unqualified for the job (regardless of how those questions would be answered):

- Cameron and the Keon Center both allege that she is not actually disabled within the meaning of the ADA: Cameron, because she denies a deficit in interaction; and the Keon Center, because (*inter alia* ) it denies that the inability to interact is a disability.

- Cameron alleges that Melville regards her as lacking in an ability to interact; and the Keon Center affirmatively undertakes to show that she was fired from her supervisory position because that ability was lacking in fact.

- Cameron demanded that the Keon Center bar Johnston from entering the building; after that accommodation had been rejected, she demanded as an alternative accommodation that she be allowed to leave the premises when Johnston visited her step-child, and she has sued under the ADA for failure to provide such accommodation (the same argument she makes on appeal); she thus concedes her inability to get along with Johnston, a problem that precipitated Johnston's departure from employment.

Since Cameron's conceded inability to get along with Johnston drove away an employee whom she was supposed to be supervising, and since Cameron does not claim that the inability is caused by any actual disability within the meaning of the ADA, it is clear that she was unqualified to be a supervisor. When an accommodation is requested and denied, and the employee brings an ADA claim premised on that denial, summary judgment may be granted against the plaintiff if the accommodation is one without which performance of an essential job function is impaired, and if the requested accommodation is unreasonable.

■ Second, Cameron also claims that Melville regarded her as disabled because he believed her to be substantially impaired in the major life activity of working. *See Bartlett v. New York State Bd. of Law Exam'rs*, 226 F.3d 69, 83 (2d Cir.2000) (accepting EEOC regulations defining the term "major life activity" to include working); *but cf. Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 492, 119 S.Ct. 2139, 144 L.Ed.2d 450 (1999) (declining to decide whether working is a "major life activity" under the ADA). To make out this claim, a plaintiff must establish that she was regarded as "significantly restricted in the

ability to perform either a class of jobs or a broad range of jobs." 29 C.F.R. § 1630.2(j)(3)(i). "The inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working." *Id.; see also Sutton,* 527 U.S. at 491–92, 119 S.Ct. 2139. Cameron supports this claim with nothing but speculation, and the Keon Center rebuts it entirely with undisputed facts.

It is undisputed that Melville knew at all relevant times that Cameron suffered from anxiety attacks, and that her condition required psychiatric attention; indeed, he authorized time off to allow her to receive the treatment she needed. It is also undisputed that, despite this, he promoted Cameron to position after position of increasing responsibility, including her job as Associate Director, second in command to himself. It is just as clear that, until her confrontation with Johnston and its aftermath, the Keon Center was satisfied with Cameron's ability to work in a wide variety of jobs, and that Melville deemed her capable of being his Associate Director.

Cameron relies on evidence of (1) Melville's apparent unwillingness to discuss her psychiatric condition, and (2) his reliance on alleged factual inaccuracies in arriving at his decision to terminate her. But this evidence fails to create a dispute as to a material fact. Cameron's observation that Melville became "uptight" and changed the subject whenever she mentioned her psychiatric condition could, one supposes, suggest (as Cameron suggests) that he was disturbed and upset by her condition. On the other hand, it could suggest a polite distance, an avoidance of intimacy at work, or a lack of interest. Choosing one explanation over another

without more evidence is a matter of speculation, just as it would be speculation to infer from any interest he might have expressed that he was inappropriately fixated on her condition. *Cf. Niagara Mohawk Power Corp. v. Jones Chem., Inc.,* 315 F.3d 171, 177 (2d Cir.2003) ("[B]ecause there is no evidence that points to one party rather than another, the only basis for such a jury finding would be impermissible speculation.")

Nor is it material to the dispute at hand that Cameron contests the truth of the complaints expressed against her to Melville by various employees. Cameron has had the opportunity to take discovery, but adduces no evidence that these complaints were fabricated by Melville. In contrast, it is undisputed that Melville fired Cameron after Johnston resigned, citing Cameron's abusive conduct, and after learning that she had been abusive to Trisha McIntyre, who was a case manager at the time. In addition, both Melville and John McCarthy, a recently hired human resources employee, testified under oath that McCarthy, visibly upset, had told Melville on November 2 that Cameron was criticizing him, asserting her superior ability to be executive director, and pressuring staff to support a planned lawsuit against Melville. Cameron's conclusory denials that these complaints were made before November 3 are not based on personal knowledge and are insufficient to defeat summary judgment. Thus, there is no genuine dispute that Melville fired Cameron after being told of conduct that indicated a lack of the requisite managerial skills and temperament.

█ The inaccuracy of those reports does not matter if Melville believed them.[2] *See Giordano,* 274 F.3d at 748 ("Under 42

---

**2.** Because these statements are not used to prove the truth of the matter asserted, but to establish Melville's state of mind, they are not hearsay as Cameron contends. *See* Fed. R.Evid. 801(c).

U.S.C. § 12102(2)(C) ('regarded as disabled'), the decisive issue is the employer's *perception* of his or her employee's alleged impairment."); *cf. Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 259, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981) ("[An] employer has discretion to choose among equally qualified candidates, provided that the decision is not based on unlawful criteria. The fact that a court may think that the employer misjudged the qualifications of the applicants does not in itself expose him to Title VII liability, although this may be probative of whether the employer's reasons are pretexts for discrimination."). Here, an inference that Melville fabricated complaints would be based on nothing but speculation, lacking in the "concrete particulars" required to defeat summary judgment. *Meiri v. Dacon*, 759 F.2d 989, 998 (2d Cir.1985). There is evidence that Melville regarded Cameron as unfit; there is no evidence that he formed an erroneous view concerning her psychiatric condition.

In short, Cameron's denials are immaterial because they do not call into question Melville's belief that what he was told was true, and she has thus failed to contradict Melville's testimony that he believed she was unfit to be his Associate Director.

## CONCLUSION

For the foregoing reasons, we affirm the district court's order granting summary judgment in favor of the defendants.