361 F.3d 146
 Marcia LUTWIN, Linda Wierda, Jane Kozlowski, Margaret A. Walz, Roger Audette, Marion Morgan, by her next friend, Dorothy M. Hiltz, Julia M. Culver, by her next friend, Rev. Horace Mitchell, Bertha P. Chiplin, by her next friend, Alfred J. Chiplin, Sr., Plaintiffs-Appellants,
Madalyn Rovner, Roland Cote, Florentina Calderon, by her next friend, Eva Moreno, Helen Bagwell, Maxine Mormor, Katherine Watts, Intervenors-Plaintiffs-Appellants,
Ruth Healey, Plaintiff,
v.
Tommy G. THOMPSON, Secretary, United States Department of Health and Human Services, Defendant-Appellee.
 No. 01-6269.
 United States Court of Appeals, Second Circuit.
 Argued: October 22, 2002.
 Decided: February 26, 2004.
 
 Gill Deford, Center for Medicare Advocacy, Inc., Willimantic, CT (Judith Stein, Brad Plebani, and Pamela A. Meliso, Center for Medicare Advocacy, Inc., Willimantic, CT; Alfred J. Chiplin, Jr. and Vicki Gottlich, Center for Medicare Advocacy, Inc., Washington, DC; Sally Hart, Center for Medicare Advocacy, Inc., Tucson, AZ; Diane Paulson, Greater Boston Legal Services, Boston, MA; Edward C. King, National Senior Citizens Law Center, Washington, DC; Sarah Lock, AARP Foundation Litigation, Washington, DC; Lenore Gerard, San Francisco, CA, of counsel), for Plaintiffs-Appellants.
 Jeffrey Clair (Barbara C. Biddle, of counsel; Robert D. McCallum, Jr., Assistant Attorney General, and John A. Danaher, III, United States Attorney for the District of Connecticut, on the brief), United States Department of Justice, Washington, D.C., for Defendant-Appellee.
 Craig A. Landy, Landy & Seymour, New York, NY, for Amici Curiae Dr. Paul Edelen, Dr. Kenneth Dardick, Dr. Michelle Barry, Dr. Robert J. Bund, Dr. Walter T. McPhee, Dr. Michael Keenan, Dr. Christopher S. Sewell, and Dr. A. Goswami.
 Before: WINTER and CABRANES, Circuit Judges, and JONES, District Judge.*
 Judge WINTER dissents in a separate opinion.
 JOSÉ A. CABRANES, Circuit Judge.
 
 
 1
 Plaintiffs in this class action are homebound Medicare beneficiaries who rely on Medicare coverage for various home health services provided by private Home Health Agencies ("HHAs"). They seek declaratory and injunctive relief that would require the Secretary of the United States Department of Health and Human Services ("the Secretary" or "HHS") to compel HHAs to provide greater procedural protections before reducing or terminating home health services to Medicare beneficiaries.
 
 
 2
 The United States District Court for the District of Connecticut (Dominic J. Squatrito, Judge) entered a declaratory judgment stating that Medicare beneficiaries have a "legal right" under the Medicare statute, and possibly under the Due Process Clause, to receive written notice from an HHA before that HHA reduces or terminates home health services pursuant to an adverse Medicare coverage determination. Healey v. Shalala, 2000 WL 303439 (D.Conn. Feb.11, 2000) ("Healey I") (report and recommendation of Magistrate Judge Thomas P. Smith, adopted by Judge Squatrito in an order entered on March 8, 2000).
 
 
 3
 In a subsequent ruling, the District Court granted summary judgment to the Secretary on all other claims. Healey v. Thompson, 186 F.Supp.2d 105 (D.Conn. 2001) ("Healey II") (report and recommendation of Magistrate Judge Smith, adopted by Judge Squatrito in an order entered September 24, 2001). The Court declined to order injunctive relief or to expand its declaratory judgment to require written notice when HHAs reduce or terminate home health services for reasons other than adverse Medicare judgments, such as a physician's failure to certify a care plan. Id. at 121. The Court also held that the Due Process Clause does not require pre-deprivation review by the Secretary of an HHA's adverse coverage determination. Id. at 128. Plaintiffs appeal the District Court's ruling in Healey II.
 
 
 4
 We hold that the Medicare statute requires HHAs to provide written notice to Medicare beneficiaries before reducing or terminating services, not only based on the HHAs' adverse Medicare coverage determinations, as the District Court held, but also for any other reason. Accordingly, the District Court's grant of summary judgment to the Secretary on the issue of notice is vacated, and the cause will be remanded to the District Court for consideration of such declaratory and injunctive relief as may be necessary to ensure that proper written notice is provided to Medicare beneficiaries.
 
 
 5
 In addition, we hold that the Due Process Clause does not require pre-deprivation review by the Secretary of an HHA's adverse coverage determination, and we affirm the District Court's grant of summary judgment to the Secretary on that claim.
 
 Background
 
 6
 The facts and procedural history relevant to this case are recounted in detail in both the report and recommendation of Magistrate Judge Smith in Healey I, 2000 WL 303439, and the subsequent report and recommendation of the same Magistrate Judge in Healey II, 186 F.Supp.2d 105 — both of which were adopted without modification by Judge Squatrito. We set forth below only such facts as are necessary to the resolution of this appeal.
 
 I. The Plaintiffs' Claims
 
 7
 Plaintiffs represent a class of similarly situated "elderly and disabled Medicare beneficiaries" who at one time received, or presently receive, home health care services provided by an HHA, but now face the reduction or termination, or the threat of reduction or termination, of their services. Compl. ¶¶ 1, 3. Plaintiffs filed suit on March 9, 1998 in the District Court against the Secretary seeking "meaningful notice and appeal rights when their home health benefits are reduced or terminated." Id.[1]
 
 
 8
 At the time plaintiffs brought suit, the Medicare reimbursement process operated as follows: A private HHA that had provided services to a beneficiary would submit a Medicare reimbursement claim to the Health Care Financing Administration ("HCFA") (the agency within the Department of Health and Human Services that administers Medicare, now known as the Centers for Medicare and Medicaid Services or "CMS"), which would then reimburse the HHA for the covered services. Healey I, 2000 WL 303439, at *1 (citing Heckler v. Ringer, 466 U.S. 602, 605, 104 S.Ct. 2013, 80 L.Ed.2d 622 (1984)). Under this system, an HHA could prospectively decline to provide, or cease providing, services to a Medicare beneficiary when it concluded that HCFA would not cover those services. Because only an HHA could be reimbursed, and because reimbursement could only be sought for services already rendered, a Medicare beneficiary faced with an adverse coverage determination by an HHA could obtain review by the Secretary only if: (1) the beneficiary requested a "demand bill," which is "a claim [submitted by an HHA to HCFA] for services or items that the [HHA] believes are not covered but which the [HHA] must submit [to HCFA] at the request of the beneficiary," and (2) the beneficiary agreed to pay the HHA for the care provided if HCFA affirmed the adverse coverage determination. Id. at *3.
 
 
 9
 In their lawsuit, plaintiffs sought declaratory and injunctive relief to remedy four asserted violations of the Medicare statute and the Due Process Clause attributable to the Secretary: "(1) failing to provide written notice when home health agencies deny, reduce, or terminate home health services; (2) failing to provide a statement of the rationale for the change in benefits, a notice that the beneficiary may contest the change, and an explanation of how to use the appeal process; (3) neglecting to establish an effective demand bill procedure; and (4) refusing to provide for a pre-deprivation review process during the appeal." Healey II, 186 F.Supp.2d at 113.
 
 II. Healey I
 
 10
 After the parties cross-moved for summary judgment on plaintiffs' claims, Magistrate Judge Thomas P. Smith recommended on February 11, 2000 that the District Court enter a declaratory judgment establishing that, under the Medicare statute:
 
 
 11
 [P]laintiffs have a legal right to a written: (1) pre-deprivation statement why the HHA believes Medicare may not or may no longer cover their services; (2) explanation of the circumstances in which a beneficiary has the right to have a demand bill submitted[;] and (3) disclosure of information regarding a patient's right to appeal.
 
 
 12
 Healey I, 2000 WL 303439, at *1 (citation and internal quotation marks omitted).
 
 
 13
 Because the Magistrate Judge's holding was based entirely on the Medicare statute, he held that it "may not be necessary for the district court to base its decision on a constitutional underpinning." Id. at *11. However, the Magistrate stated that "if so directed by the court" he would make further findings to facilitate a finding as to what procedural protections the Due Process Clause of the Constitution requires. Id.
 
 
 14
 Magistrate Judge Smith noted that the Secretary was "in the process of developing and implementing mandatory notice language which all HHAs [would] be required to use and which [would] provide beneficiaries with all the information that even plaintiffs insist is required," including notice of "the medical reason why the HHA believes Medicare may not or may no longer cover the services, an explanation of the circumstances in which a beneficiary has the right to have a demand bill submitted ... and information regarding a beneficiary's right to appeal." Id. at *10 (citations and internal quotation marks omitted). Accordingly, the Magistrate Judge recommended reserving for future proceedings the question of injunctive relief. Id. at *11.
 
 
 15
 The Magistrate Judge's recommendation was approved and adopted in full by Judge Squatrito in an order entered on March 8, 2000. Healey v. Shalala, 2000 WL 436618 (D.Conn. Mar. 8, 2000).
 
 III. Intervening Changes to Medicare
 
 16
 On July 3, 2000, roughly four months after the District Court filed its initial ruling in Healey I, HCFA published a final rule effecting "fundamental changes" to home health services within the Medicare system that had "a significant impact upon this litigation." Healey II, 186 F.Supp.2d at 109 n. 2. In particular, the rule implemented the Home Health Prospective Payment System ("HH PPS") effective October 1, 2000. Id. (citing 42 C.F.R. 409-411, 413, 424, 484). In the words of the District Court:
 
 
 17
 The linchpin of the [new] HH PPS is the sixty-day episode of care. See 42 C.F.R. § 484.205(a). When a patient eligible for Medicare coverage requires home health care services, the physician, in conjunction with the provider, devises a plan of care for the patient for the next sixty days that includes, among other things, a diagnosis, description of the types of services required, the frequency of the services, and the provider of the services. See 42 C.F.R. § 484.18(a). This plan of care must then be certified in order to obtain final payment. 42 U.S.C. § 1395f(a)(2)(C).
 
 
 18
 In addition, the HHA must conduct a comprehensive assessment of the patient [as set forth in] 42 C.F.R. § 484.55.... At a minimum [such an assessment] must be conducted every sixty days, and a new physician certified plan of care must be issued at the same increment of time. 42 C.F.R. § 484.55(d).
 
 
 19
 Upon evaluation of the patient and formulation of a plan of care, the HHA then submits a request for anticipated payment....
 
 
 20
 Upon submission of a properly supported request for anticipated payment, the HHA will then receive 60% (50% for subsequent episodes) of the total payment from the fiscal intermediary, and the remaining 40% upon submission of a final claim, detailing the actual services provided, along with a physician certified plan of care. See 42 C.F.R. § 484.205(b). This final request is considered the actual Medicare claim....
 
 
 21
 Healey II, 186 F.Supp.2d at 109-10 (footnote omitted).
 
 
 22
 The new procedures of the HH PPS have changed the mechanics of the Medicare reimbursement process. First, under the HH PPS, in order for a Medicare beneficiary to be covered by Medicare at all, the beneficiary's treating physician must certify a plan of care prior to the initial 60-day episode of care, and must recertify the plan every 60 days thereafter. 42 C.F.R. § 484.18(a)(b). Second, under the HH PPS, "[b]ecause the final request for payment at the end of a sixty-day episode of care is considered the Medicare `claim,' and only one claim may be submitted per episode, a demand bill can now only be submitted after the sixty-day episode has occurred." Healey II, 186 F.Supp.2d at 112.
 
 
 23
 In conjunction with the HH PPS changes to the Medicare reimbursement system, the Secretary, through HCFA, has promulgated a "transmittal" to all HHAs requiring them to provide mandatory notice to Medicare beneficiaries when making adverse coverage decisions in the form of a Home Health Advance Beneficiary Notice ("HHABN"). See Health Care Financing Administration, Transmittal A-01-05 (Jan. 16, 2001) (Advance Beneficiary Notices Must Be Given to Beneficiaries and Demand Bills Must be Submitted By Home Health Agencies (HHAs) — ACTION) (hereinafter "HCFA Transmittal A-01-05"); see also Health Care Financing Administration, Transmittal A-02-017 (Feb. 26, 2002) (Advance Beneficiary Notes Must Be Given to Beneficiaries and Demand Bills Must be Submitted By Home Health Agencies (HHAs) — ACTION) (clarifying HCFA Transmittal A-01-05).
 
 
 24
 The HHABN must be "written in plain language," and "purports to serve the dual purpose of providing written notification of an HHA's adverse coverage determination, as well as appri[s]ing the beneficiary of the appeals process." Healey II, 186 F.Supp.2d at 111. "Specifically, the notice provides a reason why the HHA does not believe the services ordered by a physician are covered under Medicare, the cost of the services, and the conditions precedent to initiating the appeals process." Id. at 111-12.
 
 
 25
 HCFA Transmittal A-01-05 and the new HHABN process it established have directly addressed many of plaintiffs' concerns regarding notice by requiring notice of reductions or terminations of service and notice of a beneficiary's appeal rights whenever an HHA makes an adverse coverage determination.[2] However, HCFA Transmittal A-01-05 expressly indicates that an HHABN notice is not required where home health care is reduced or terminated pursuant to an order from a beneficiary's treating physician, rather than pursuant to an HHA's adverse Medicare coverage determination. In this respect, the transmittal indicates that, because "Medicare never pays for home health care that is not ordered by a physician," an HHA is not obligated to provide an HHABN in "situations where care is reduced or terminated in accordance with a physician's order; that is, where the services at issue are not ordered by a physician or where the physician agrees with [the HHA's] assessment that the services are not or are no longer reasonable and necessary." Id. at 9.
 
 IV. Healey II
 
 26
 In Healey II, the District Court considered plaintiffs' and the Secretary's renewed cross-motions for summary judgment in light of developments since Healey I. Plaintiffs asserted that, "although some changes in the system are a step in the right direction, the procedures in place fall short of meeting the statutory requirements and affording them sufficient due process of law to protect their property interest in Medicare coverage." Healey II, 186 F.Supp.2d at 113. In particular, plaintiffs sought two forms of additional relief. First, they requested a holding that notice to the Medicare beneficiary is required when an HHA makes "any adverse determination, rather than just an adverse determination regarding Medicare coverage." Id. at 114 (emphasis added). Second, plaintiffs claimed that the Due Process Clause requires the Secretary to establish a procedure for the pre-deprivation review of an HHA's adverse coverage determinations. Id. at 121.
 
 
 27
 On September 21, 2001, Magistrate Judge Smith issued a recommended ruling on the parties' cross-motions. The Magistrate Judge first held that neither the Medicare statute nor the Due Process Clause required the Secretary to provide written notice to beneficiaries in any situation not already provided for under the HHABN process. Specifically, the Magistrate Judge held that "[t]he plain language of the statute does not require written notice of a reduction or termination of services initiated by [i] the treating physician or [ii] the HHA that do not involve Medicare coverage." Healey II, 186 F.Supp.2d at 115. He rejected the plaintiffs' argument that the realm of "coverage decisions" should be construed broadly to include reductions or terminations of care based on changes in a physician's orders because a physician's order is "one of the several criteria for eligibility for Medicare home health coverage ... under 42 U.S.C. § 1395x(m)." Id. at 116 (citation and internal quotation marks omitted). The Magistrate Judge also rejected plaintiffs' claim that the Due Process Clause, apart from the Medicare statute, requires notice when home health services are terminated or reduced on the basis of a physician's orders. Id. at 117-21.
 
 
 28
 Separately, the Magistrate Judge rejected plaintiffs' argument that the Due Process Clause requires a procedure for pre-deprivation review of an HHA's adverse coverage determination. Id. at 121-22. Although he held that HHAs are state actors when they make Medicare coverage determinations, id. at 119, after conducting the balancing test required under Mathews v. Eldridge, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), he determined that "plaintiffs' interest in [a pre-deprivation review procedure], combined with the risk of erroneous deprivation [of Medicare benefits under the current regime], does not outweigh the public interest [in maintaining the status quo]," id. at 121-22.
 
 
 29
 Accordingly, the Magistrate Judge recommended that the declaratory judgment in Healey I be memorialized in the form of a final judgment, and that summary judgment be granted to the Secretary in all other respects. Id. at 107-08, 128. Judge Squatrito again adopted the Magistrate Judge's recommendations in full. Id. at 107.
 
 V. Claims on Appeal
 
 30
 The District Court, plaintiffs, and the Secretary agree that HHAs must provide written notice through the HHABN process when HHAs make adverse Medicare coverage determinations. On appeal, plaintiffs assert that they are also entitled to written notice when HHAs reduce or terminate home health services for lack of physician recertification. Pls.' Br. at 20. Plaintiffs claim that such a decision is a "coverage" decision, because it is often the result of an HHA's decision not to seek physician certification of treatment, which is a prerequisite to Medicare coverage. Id.
 
 
 31
 The District Court granted summary judgment to the Secretary, holding that written notice is required only when HHAs make adverse Medicare coverage determinations, and that such determinations do not encompass situations where an HHA denies services for lack of physician certification.
 
 
 32
 We must therefore determine whether the District Court's grant of summary judgment was correct — i.e., whether the Medicare statute or the Due Process Clause of the Constitution requires written notice when HHAs reduce or terminate home health services for lack of physician certification. We must also consider whether the District Court properly granted summary judgment to the Secretary with respect to plaintiffs' claim that "correct application of the Eldridge balancing test requires pre-deprivation review to ensure due process for Medicare home health patients." Id. at 33.
 
 Discussion
 
 33
 We review de novo a district court's entry of summary judgment. See, e.g., Cameron v. Community Aid for Retarded Children, Inc., 335 F.3d 60, 63 (2d Cir. 2003).
 
 
 34
 I. Plaintiffs' Claim of Entitlement to Written Notice
 
 
 35
 Plaintiffs argue that they are entitled to written notice under the Medicare statute before their home health care services are reduced or terminated based on lack of physician certification. They characterize the District Court's decision as "carv[ing] out an exception" to the requirement of written notice; plaintiffs argue that because HHAs may choose not to request physician certification at all, "the exception threatens to swallow the rule and to defeat the notice requirement...." Pls.' Rep. Br. at 1. Plaintiffs claim that the "startling truth" is that, under the District Court's decision, "if the HHA decides not to provide more services, it can simply not send a new care plan to the physician for his certification," then couch the decision as made pursuant to a "lack of physician certification," thereby dispensing with the requirement of written notice. Pls.' Br. at 24.
 
 
 36
 Several amici physicians have filed a brief in support of plaintiffs' position as a matter of policy. They assert that, "when the home health agency reports that the treating physician concurred in the decision to reduce or terminate home health services, there is an unacceptably high risk that the home health agency has misled, misinformed or worse, never even consulted the treating physician before taking it upon itself to reduce or terminate necessary patient services." Amicus Br. for Dr. Paul Edelen, et al. ("Amicus Br.") at 2. The amici physicians contend that "[d]efendant's policy, if upheld, would allow home health agencies to make their own independent determination of the medical need for services, and permit home health agencies unbridled autonomy to unilaterally stop[] treatment without physician concurrence and without notice to the beneficiary." Id.
 
 
 37
 The Secretary disputes that the language of the Medicare statute or the Due Process Clause requires any more written notice than that provided through the HHABN procedure. He argues that the language of the statute supports HCFA Transmittal A-01-05, which counsels that HHAs need not provide HHABNs in "situations where care is reduced or terminated in accordance with a physician's order; that is, where the services at issue are not ordered by a physician or where the physician agrees with [the HHA's] assessment that the services are not or are no longer reasonable and necessary." HCFA Transmittal A-01-05, at 9. The Secretary also challenges the plaintiffs' assertion that HHAs exercise effective control over the physician recertification process, and that HHAs routinely abuse the physician recertification process.
 
 
 38
 For the reasons explained below, we hold that the Medicare statute requires that HHAs give written notice before they reduce or terminate home health services for any reason, including for lack of physician certification.[3]
 
 II. The Medicare Statute
 
 39
 The question presented in this case involves interpretation of 42 U.S.C. § 1395bbb(a) — the sole statutory provision requiring written notice of changes in a beneficiary's home health care. The relevant language reads as follows:
 
 
 40
 (a) Conditions of participation; protection of individual rights; notification of State entities; use of home health aides; medical equipment; individual's plan of care; compliance with Federal, State, and local laws and regulations
 
 
 41
 The conditions of participation that a home health agency is required to meet under this subsection are as follows:
 
 
 42
 (1) The agency protects and promotes the rights of each individual under its care, including each of the following rights:
 
 
 43
 (A) The right to be fully informed in advance about the care and treatment to be provided by the agency, to be fully informed in advance of any changes in the care or treatment to be provided by the agency that may affect the individual's well-being, and (except with respect to an individual adjudged incompetent) to participate in planning care and treatment or changes in care or treatment.
 
 
 44
 * * * * * *
 
 
 45
 (E) The right to be fully informed orally and in writing (in advance of coming under the care of the agency) of —
 
 
 46
 (i) all items and services furnished by (or under arrangements with) the agency for which payment may be made under this subchapter,
 
 
 47
 (ii) the coverage available for such items and services under this subchapter, subchapter XIX of this chapter, and any other Federal program of which the agency is reasonably aware,
 
 
 48
 (iii) any charges for items and services not covered under this subchapter and any charges the individual may have to pay with respect to items and services furnished by (or under arrangements with) the agency, and
 
 
 49
 (iv) any changes in the charges or items and services described in clause (i), (ii), or (iii).
 
 
 50
 (F) The right to be fully informed in writing (in advance of coming under the care of the agency) of the individual's rights and obligations under this subchapter.
 
 
 51
 * * * * * *
 
 
 52
 42 U.S.C. § 1395bbb(a) (emphasis added).
 
 
 53
 The District Court found the plain language of the statute to be unambiguous, and therefore did not consider or accord any deference under Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984), to the Secretary's interpretation of the statute. In interpreting the statute, the District Court stated as follows:
 
 
 54
 The plain language of the statute does not require written notice of a reduction or termination of services initiated by the treating physician or the HHA that do not involve Medicare coverage. Subsection (A), which covers [non-coverage determinations], confers "the right to be fully informed in advance," whereas subsection (E), which explicitly covers HHA decisions relating to Medicare coverage, specifically confers "the right to be fully informed orally and in writing." Id. This disparity in use of language has a purpose, see Bates v. U.S., 522 U.S. 23, 29-30, 118 S.Ct. 285, 139 L.Ed.2d 215 (1997) (stating that "[w]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion," internal quotation marks omitted), and "the court's role is not to `correct' the text so that it better serves the statute's purposes, for it is the function of the political branches not only to define the goals but also to choose the means for reaching them," Engine Mfr.'s Ass'n v. U.S. Envtl. Protection Agency, 88 F.3d 1075, 1089 (D.C.Cir.1996). A court may not "avoid the Congressional intent clearly expressed in the text simply by asserting that its preferred approach would be better policy." Id.
 
 
 55
 Healey II, 186 F.Supp.2d at 115-16 (emphasis added). The District Court also rejected plaintiffs' efforts to describe a reduction or termination of services resulting from the decision of a Medicare beneficiary's treating physician not to seek further home health care services as a "coverage decision." Id. at 116-17.
 
 
 56
 We agree broadly with the District Court's interpretation of § 1395bbb(a) as providing a two-tiered scheme of notice. Subsection (A) confers "the right to be fully informed in advance" in certain circumstances, but does not specifically mandate written notice; subsection (E), in contrast, confers "the right to be fully informed orally and in writing." We disagree, however, with the interpretation of the District Court that subsection (E), requiring written notice, applies only to coverage determinations, while subsection (A) applies to all other changes in services. We hold that the statute requires written notice prior to any reduction or termination in the items and services furnished by the HHA. Because we find the statutory language to be clear and unambiguous, deference to the Secretary's interpretation under Chevron is not appropriate.
 
 
 57
 The text of 42 U.S.C. § 1395bbb(a)(1)(E)(i) states that an HHA must inform a Medicare beneficiary of "all items and services furnished by (or under arrangements with) the agency for which payment may be made under [Medicare]." Subsection (iv) of the same provision states that an HHA must inform a beneficiary of "any changes in the charges or items and services described in clause (i), (ii), or (iii)." The statute thus quite explicitly requires an HHA which furnishes "items or services... for which payment may be made under [Medicare]," id. § 1395bbb(a)(1)(E)(i), to provide written notice to Medicare beneficiaries whenever there are "changes" in those "items and services." Id. § 1395bbb(a)(1)(E)(i), (iv). Those changes might be occasioned by the HHA's conclusion that the items or services are no longer reimbursable by Medicare because of a lack of eligibility or physician certification; or the changes might result from an HHA's decision that, even though items and services are still covered by Medicare, the HHA is no longer willing to provide them. For example, if an HHA were to decide that it will, for reasons of profitability, no longer provide certain home health services to a beneficiary that continue to be covered, that is a change in the "items and service furnished by ... the agency" that requires written notice.[4]
 
 
 58
 The Secretary argues that "[i]f ... a home health agency decides that its resources do not permit it to render physical therapy to a patient safely or economically, it is not, in the language of subsection (a)(1)(E)(i), basing its decision on whether physical therapy is an `item[] or service[]... for which payment may be made' under Medicare.'" Def.'s Br. at 24-25. However, the Secretary's selective quotation omits essential language. The statute actually speaks of "items or services furnished by (or under arrangements with) the agency for which payment may be made" under Medicare. 42 U.S.C. § 1395bbb(a)(1)(E)(i). The Secretary concedes that when it is making an economic decision, it is "making a business decision turning on whether it is able and willing to provide a service otherwise covered by Medicare." Def.'s Br. at 25. Regardless of what the HHA's decision is based on, it is effecting a change in "the items and services furnished by ... the agency for which payment may be made under [Medicare]." 42 U.S.C. § 1395bbb(a)(1)(E)(i). Under the language of the Medicare statute, such a change requires notice. Id. § 1395bbb(a)(1)(e)(iv).
 
 
 59
 Our interpretation of subsection (E) does not, as the Secretary argues, render the language of subsection (A) mere surplusage. Subsection (A) discusses "care and treatment" to be provided by the agency; it confers "the right to be fully informed in advance about the care and treatment to be provided by the agency," as well as the right "to be fully informed in advance of any changes in the care or treatment to be provided by the agency that may affect the individual's well-being," and the right, except with respect to individuals adjudged incompetent, "to participate in planning care and treatment or changes in care or treatment." Subsection (E), in contrast, addresses "items and services," and provides for written notice prior to "any changes in the charges or items or services," among other things. We believe that informing a Medicare beneficiary about the "care and treatment to be provided by the agency," and about the beneficiary's right to "participate in planning care and treatment," encompasses a broader range of treatment-related information than merely notice of changes in the "items and services" to be furnished by an HHA. A Medicare beneficiary's right to be fully informed about the care and treatment to be provided by an HHA entails the right to some information about the nature of that treatment beyond a stark statement of which items and services will be furnished by the agency. Without deciding precisely what information an HHA must furnish under subsection (A), an issue not before us, we conclude that our reading of subsection (E) does not render subsection (A) surplusage.
 
 
 60
 In contrast, the Secretary's interpretation of the statute would render another portion of the statute, subsection (a)(1)(E)(i), superfluous. Subsection (a)(1)(E)(ii) independently requires an HHA to give written notice of "the coverage available for items and services under this subchapter." If, as the Secretary argues, "a home health agency's decision not to render a particular service falls well outside the plain language of [subsection (i)]," then subsection (i) is mere surplusage because it provides no protection to beneficiaries beyond the scope of subsection (ii), which specifically addresses coverage determinations. "Where possible, we avoid construing a statute so as to render a provision mere surplusage." Burrus v. Vegliante, 336 F.3d 82, 91 (2d Cir.2003) (citing State of New York v. Shore Realty Corp., 759 F.2d 1032, 1044 (2d Cir.1985) ("Without a clear congressional command otherwise, we will not construe a statute in any way that makes some of its provisions surplusage.")).
 
 
 61
 Our reading of the statute is more consistent not only with the plain language of the statute, but also with the apparent purpose of the HHABN scheme set up by the Secretary, which purports to provide notice to Medicare beneficiaries of adverse coverage determinations and to prevent the arbitrary termination of home health services. To interpret the statute in the manner advocated by the Secretary — so as to exempt HHAs from any written notice requirements as long as the termination is based on profitability considerations or caprice, rather than on a judgment as to Medicare coverage — would render the statute and the HHABN process meaningless. Under such a reading of the statute, HHAs could always avoid issuing HHABNs simply by terminating coverage for any reason at all, so long as it was not strictly a Medicate coverage determination. Such a loophole undermines the entire HHABN regime and makes little sense.[5]
 
 
 62
 Accordingly, we interpret the Medicare statute to require notice whenever an HHA reduces or terminates home health services — regardless of whether the reason for that change is a Medicare coverage determination, lack of physician certification, an HHA's unwillingness to provide services for business reasons unrelated to coverage, or sheer caprice.
 
 III. Plaintiffs' Pre-Deprivation Review Claim
 
 63
 In addition to plaintiffs' notice claim, we consider plaintiffs' assertion that the Due Process Clause of the Constitution requires the Secretary to implement a pre-deprivation review procedure for the appeal of an HHA's adverse coverage determination. The District Court determined (1) that plaintiffs have a property interest in the receipt of Medicare home health benefits, Healey II, 186 F.Supp.2d at 122 n. 13, and (2) that a balancing of the Mathews v. Eldridge factors did not mandate a pre-deprivation review procedure, id. at 128.
 
 
 64
 We agree with the District Court's careful balancing of the relevant interests in determining whether additional process in the form of a pre-deprivation review procedure was required. See id. at 121-28. We agree that the fiscal and administrative burden to the government associated with such an alteration in the Medicare process outweighs the risk of erroneous deprivation of the plaintiffs' property interest in home health benefits under the present regime. We therefore affirm the District Court's grant of summary judgment to the Secretary with respect to whether pre-deprivation review is required.
 
 Conclusion
 
 65
 The District Court's grant of summary judgment to the Secretary is thus AFFIRMED insofar as the Court held that the Due Process Clause does not require a pre-deprivation review procedure for an HHA's adverse Medicare coverage determination.
 
 
 66
 The District Court's grant of summary judgment to the Secretary is VACATED in all other respects, and the cause is REMANDED to the District Court for consideration of such relief as may be necessary to ensure that proper written notice is provided to Medicare beneficiaries. The District Court shall consider general principles of equity in determining whether injunctive, or merely declaratory, relief is appropriate in light of this holding.
 
 
 
 Notes:
 
 
 *
 The Honorable Barbara S. Jones, of the United States District Court for the Southern District of New York, sitting by designation
 
 
 [1]
 On appeal, the Secretary argues for the first time — in a footnote — that the plaintiff class, as certified by the District Court, improperly includes "beneficiaries whose claims `will be' denied in the future," in addition to plaintiffs who have otherwise failed to "present" their claims to the Secretary before bringing suit, as required byShalala v. Illinois Council on Long Term Care, 529 U.S. 1, 15, 20, 120 S.Ct. 1084, 146 L.Ed.2d 1 (2000). Def.'s Br. at 14 n. 6. We decline to consider this argument because "[a] contention is not sufficiently presented for appeal if it is conclusorily asserted only in a footnote." Tolbert v. Queens College, 242 F.3d 58, 75 (2d Cir.2001). Furthermore, because the Secretary concedes that at least some of the class members — namely those who have actually had benefits terminated and have presented their claim to the Secretary — are proper plaintiffs, Def.'s Br. at 14 n. 6, we may consider the broad-based declaratory and injunctive relief that the plaintiff class seeks notwithstanding the claimed potential defect.
 
 
 [2]
 The specific language of the transmittal indicating this requirement provides as follows:
 v. Provision of Home Health Advance Beneficiary Notices (HHABNs). Provide a HHABN to beneficiaries, according to the following instructions, whenever Medicare payment denial is expected on any one of the following statutory bases: not medically necessary and reasonable (under § 1862(a)(1) of the Act); custodial care exclusion (under § 1862(a)(9) of the Act); and failure to meet the HHA services home-bound and intermittent care requirements (under § 1879(g)(1) of the Act). Do not pre-select any option on the form.
 a. Providing HHABNs at Initiation of Services. — In the situation in which you advise a beneficiary that you will not accept the beneficiary as a Medicare patient because you expect that Medicare will not pay for the services, for one of the reasons listed above, provide a HHABN to the beneficiary before you furnish home health services to the beneficiary. Check the first block ("We expect Medicare will not pay for any home health services for you") on the first page [of the HHABN].
 b. Providing HHABNs at Reduction of Services. — In the situation in which you propose to reduce a beneficiary's home health services because you expect that Medicare will not pay for a subset of home health services, or for any services at the current level and/or frequency of care, for one of the reasons listed above, provide a HHABN to the beneficiary before you reduce services to the beneficiary. Check the second block ("We expect Medicare will stop paying for some of your home health services") on the first page [of the HHABN].
 c. Providing HHABNs at Termination of Services. — In the situation in which you propose to stop furnishing all home health services to a beneficiary, because you expect that Medicare will not continue to pay for the services, for one of the reasons listed above, provide a HHABN to the beneficiary before you terminate such home health services. Check the third block ("We expect Medicare will stop paying for all home health services for you") on the first page [of the HHABN].
 HCFA Transmittal A-01-05, at 6.
 
 
 [3]
 Because the Medicare statute requires written notice in the circumstances suggested by plaintiffs, we decline to consider whether such notice might also be required by the Due Process ClauseCf. Christopher v. Harbury, 536 U.S. 403, 417, 122 S.Ct. 2179, 153 L.Ed.2d 413 (discussing the "obligation of the Judicial Branch to avoid deciding constitutional issues needlessly").
 
 
 [4]
 In holding that HHAs must provide written notice to Medicare beneficiaries before reducing or terminating services, we recognize thatde minimis alterations in the items and services furnished by the HHA — for example, changes in care personnel or times of arrival or departure of such personnel — would not require written notice.
 
 
 [5]
 We observe, respectfully, that our dissenting colleague does not address our parsing of the language of § 1395bbb. Nor does he discuss whether, under his interpretation of the Medicare statute, an HHA could always avoid giving written notice that it was terminating home health services, simply by making the decision to terminate based on arbitrary grounds unrelated to Medicare coverage
 
 
 
 67
 WINTER, Circuit Judge, dissenting.
 
 
 68
 I respectfully dissent.
 
 
 69
 This is an action under the Medicare statute against the Secretary of Health and Human Services. It seeks to compel the Secretary to order HHAs to give written notice in one particular circumstance to those patients on whose behalf Medicare pays for some or all of an HHA's services. That circumstance is when an HHA ceases some or all of its services because it has determined that Medicare no longer covers the services because the patient lacks a current physician certification. See Brief of Appellants at 2, 20, 23, 25. Appellants claim that the Secretary is required to order HHAs to give written notice in that circumstance because such a determination involves a Medicare coverage decision, and notice to Medicare recipients is necessary to enable them to use appeal procedures to challenge the reduction in Medicare coverage without losing the current coverage. See id. at 15-16. The Secretary argues that a physician's certification is a non-reviewable (within the Medicare system) prerequisite to seeking Medicare payment for the pertinent services and that written notice is not required, the issue essentially being one between the patient and his or her physician and not one involving either the HHA or the Secretary. See Brief of Appellees at 18, 24-25.
 
 
 70
 My colleagues resolve a different issue. They require the Secretary to order HHAs to give their patients written notification of any change in services, whether or not there is a change in Medicare coverage. See Maj. Op. at 154, 157-58. This outcome treats the problem of whether denial of a physician certification is a coverage decision — the issue at the heart of this case — as irrelevant, because the written notice requirement is not limited to Medicare coverage decisions. In short, they read 42 U.S.C. § 1395bbb(a)(1)(E) as a general "patient's bill of rights" covering contractual relationships between HHAs and all their patients to be enforced by the Secretary.[1]
 
 
 71
 In my view, this is a misreading of the statute. Section 1395bbb(a)(1) concerns "[c]onditions of participation" by HHAs in the Medicare program and sets out rights of their patients to information. Among these rights are:
 
 
 72
 (A) the right to be fully informed in advance about the care and treatment to be provided by the agency, to be fully informed in advance of any changes in the care or treatment to be provided by the agency that may affect the individual's well-being, and (except with respect to an individual adjudged incompetent) to participate in planning care and treatment or changes in care or treatment.
 
 
 73
 * * * * * *
 
 
 74
 (E) The right to be fully informed orally and in writing (in advance of coming under the care of the agency) of —
 
 
 75
 (i) all items and services furnished by (or under arrangements with) the agency for which payment may be made under this subchapter.
 
 
 76
 (ii) the coverage available for such items and services under this subchapter, subchapter XIX of this chapter, and any other Federal program of which the agency is reasonably aware.
 
 
 77
 (iii) any charges for items and services not covered under this subchapter and any charges the individual may have to pay with respect to items and services furnished by (or under arrangements with) the agency, and
 
 
 78
 (iv) any changes in the charges or items and services described in clause (i), (ii), or (iii).
 
 
 79
 The subject of the statute therefore is the conditions an HHA must meet for covered services to be reimbursed by Medicare. Under Subsection (A), an HHA that wants to be reimbursed for its services by Medicare must confer orally with the patient about the proposed program of care or changes in it. Before the patient agrees to the program or changes in it, Subsection (E) requires that the patient be informed in writing of what services are to be paid by Medicare (or may be paid after a Medicare appeal procedure), what other federal sources of funds exist for those services, and what costs will have to be borne by the patient.
 
 
 80
 Read together and in the context of a Medicare appeal procedure, Subsections (A) and (E) are a straightforward statutory scheme. They allow the patient to confer with the HHA as to the plan of care and to be informed of rights to Medicare coverage and costs to be borne individually before proceeding with the plan or changes in it. They also allow the patient to gauge the need to exercise rights under Medicare appeal procedures. If Subsection (E) was intended as a general written notice of changes in services requirement, there would have been no need to separate (A) from (E) or to make the distinctions embodied in (E)(i), (ii), and (iii), all of which relate to who will make payments. Nor would Congress likely burden the Secretary with responsibility to enforce notice requirements unrelated to payment issues. In fact, another provision of the statute, Section 1395(a), expressly governs the contractual relations between HHAs and their patients seeking non-covered services and spells out the mandatory terms for such contracts.
 
 
 81
 Left to my druthers, therefore, I would agree with the district court that the statutory language and general context are unambiguous in linking Subsection (E) to Medicare coverage issues, the difficulty being in defining what are coverage decisions and what are not, the issue briefed and argued in this case.
 
 
 82
 However, my colleagues disagree, a fact that leads me to conclude that Subsection (E)'s interplay with Subsection (A) may be ambiguous. This conclusion is to me fortified by the fact that a magistrate judge, district judge, and circuit judge have now all read the statute in a way at odds with my two colleagues. See Healey v. Thompson, 186 F.Supp.2d 105 (D.Conn.2001) (report and recommendation of Magistrate Judge Smith, adopted by Judge Squatrito in an order entered Sept. 24, 2001).
 
 
 83
 Under Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984), issues regarding an administrative agency's interpretation of a statute are governed by a three-step analysis. The first question is "whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." Id. at 842-43, 104 S.Ct. 2778. If Congress has not directly spoken to the question at issue, then "the question for the court is whether the agency's answer is based on a permissible construction of the statute." Id. at 843, 104 S.Ct. 2778. Finally, the agency's interpretation is "given controlling weight unless [it is] arbitrary, capricious, or manifestly contrary to the statute." Id. at 844, 104 S.Ct. 2778.
 
 
 84
 I would therefore follow the Secretary's view that Subsection (E) is linked to coverage decisions and is not a general patient's bill of rights. With regard to whether written notice is required of an HHA's cessation of services based on a denial of physician certification, I agree substantially with the analysis of the district court, save for my reliance on Chevron, and would affirm.
 
 
 85
 I therefore respectfully dissent.
 
 
 
 Notes:
 
 
 [1]
 How far-reaching this rationale may be is hard to determine because no party has briefed what kinds of changes an expanded (beyond Medicare coverage) notice requirement might reach. For example, my colleagues' ruling expressly states that the Secretary must require HHAs to give notice before an HHA's decision to cease providing unprofitable services, Maj. Op. at 157-58, and written notice of a host of other matters that are of importance to HHA patients, such as changes in care personnel or times of arrival or departure of such personnel, may be included