19-860-cv
*Woolf v. Strada*

# In the
# United States Court of Appeals
## for the Second Circuit

AUGUST TERM 2019

No. 19-860-cv

RONALD WOOLF,
*Plaintiff-Appellant*,

v.

MELISSA STRADA, INDIVIDUALLY, MATTHEW ASMAN, INDIVIDUALLY, JIM
NIZIOLEK, INDIVIDUALLY, ANDREW BOWYER, INDIVIDUALLY,
BLOOMBERG L.P.,
*Defendants-Appellees*,

GARY KOTOVETS, MICHAEL MORRIS, INDIVIDUALLY,
*Defendant.*

On Appeal from the United States District Court
for the Southern District of New York

SUBMITTED: JANUARY 31, 2020
DECIDED: FEBRUARY 6, 2020

Before: CABRANES, SACK, *Circuit Judges*, and FAILLA, *District Judge.**

---

Plaintiff-Appellant Ronald Woolf appeals from an award of summary judgment entered in the United States District Court for the Southern District of New York (P. Kevin Castel, *Judge*) in favor of his former employer, Bloomberg L.P., and his direct supervisors. The question presented is whether, in light of the ADA Amendments Act of 2008, an employee's inability to perform his or her particular job as a result of stress arising from the circumstances surrounding that job gives rise to a "disability" for purposes of the Americans with Disabilities Act.

On *de novo* review, we conclude, as the District Court did, that Woolf is not disabled for purposes of the ADA and, therefore, the judgment in favor of Bloomberg is **AFFIRMED.**

---

> Abraham Z. Melamed, Derek Smith Law Group, PLLC, New York, NY, *for Plaintiff-Appellant*.

---

* Judge Katherine Polk Failla, of the United States District Court for the Southern District of New York, sitting by designation.

David Wayne Garland, Edward M. Yennock, Epstein Becker & Green, P.C., New York, NY, *for Defendants-Appellees*.

---

PER CURIAM:

Plaintiff-Appellant Ronald Woolf ("Woolf") appeals from a judgment entered on March 8, 2019, in the United States District Court for the Southern District of New York (P. Kevin Castel, *Judge*) in favor of his former employer, Bloomberg L.P., and his direct supervisors (jointly, "Bloomberg"), on Woolf's claims of discrimination and retaliation under the Americans with Disabilities Act ("ADA"),[1] impairment and retaliation under the Family and Medical Leave Act ("FMLA"),[2] and retaliation under Title VII of the Civil Rights Act of 1964 ("Title VII").[3] On appeal, Woolf raises a number of challenges to the District Court's order granting summary judgment in favor of Bloomberg. Our opinion today addresses only one such challenge: whether Woolf's inability to perform his particular job as a result of stress arising from the circumstances surrounding that job gives rise to an ADA-qualifying disability in light of the ADA Amendments Act of 2008 ("ADAAA"). We conclude that it does not. In a summary order

---

[1] 42 U.S.C. §§ 12101, *et seq.*

[2] 29 U.S.C. §§ 2601, *et seq.*

[3] 42 U.S.C. §§ 2000e, *et seq.*

3

filed simultaneously herewith, we decide the other issues raised in Woolf's appeal.

In sum, the March 8, 2019 judgment in favor of Bloomberg is **AFFIRMED.**

## I. BACKGROUND[4]

When Woolf began his employment at Bloomberg L.P. in May 2011 as a sales representative, he signed a voluntary "self-identification form" stating that he did not have a disability and had no history of physical or mental impairments that substantially limited one or more major life activities. Between 2011 and 2013, however, Woolf "suffered migraines that left him temporarily incapacitated, which impaired his work ability and his life activities more generally."[5]

Woolf's migraines were related to his stress at work. Throughout his time at Bloomberg, Woolf's migraines worsened as he received various performance reviews that placed him within the lower third of employees at the company. Starting in 2012 and throughout 2013, Woolf was notified of his supervisors' concerns

---

[4] We draw the facts relevant to the limited question addressed in this opinion from the District Court's thorough March 5, 2019 Opinion and Order. *See Woolf v. Bloomberg L.P.*, No. 16-cv-6953 (PKC), 2019 WL 1046656, at *1–*8 (S.D.N.Y. Mar. 5, 2019) (providing a comprehensive account of the factual and procedural background in the case).

[5] *Id.* at *2 (internal quotation marks and citations omitted).

about underperformance, "struggle[s] to collaborate well with key [Bloomberg] business managers," "limited knowledge of the Bloomberg product/audience overall," "[l]ow credibility internally," and "[p]oor problem-solving skills."[6] Bloomberg identified the various areas for improvement and told Woolf that he should seek help from his peers within the company.

Starting in January and February 2013, Woolf inquired about the possibility of transferring within the company, including to Asia. At the time, Woolf thought that moving to Asia was consistent with his personal interests and experience in the region and would help him advance professionally within the company. In March 2013, Woolf was told that an employee must be in good standing to transfer internally. That same month, Woolf received a verbal warning about his performance and was told that he had to show "immediate and sustained improvement,"[7] to which Woolf responded with a 19-page memorandum rebutting the review and explaining that the warning "was not necessary or even warranted."[8] In April 2013, Woolf notified Bloomberg's Human Resources Department and his supervisors that he was having severe migraines and had been unable to complete a certain work task. Woolf also inquired again about his options for transferring.

---

[6] Joint App'x at 408, 657–58.

[7] *Id.* at 426–27.

[8] *Id.* at 429.

Woolf's migraines continued and, in May 2013, he explained to Bloomberg's Human Resources Department that his migraine condition could potentially result in serious health consequences. Woolf's treating neurologist also provided a letter explaining that the condition placed him at risk of a stroke or heart attack "simply from the stress he is currently experiencing at work."[9] The neurologist identified work-related stress as "the primary trigger" for Woolf's migraines, and that, absent a "change [in] his current work environment," "a medical leave of absence . . . alone will not significantly mitigate this stress."[10]

On May 31, 2013, Woolf requested that, instead of being transferred to a new position, he be permitted to continue performing his same job as a sales representative without being managed by his current supervisors. Bloomberg did not transfer Woolf, but immediately granted his request for medical leave. Between May and November 2013, Woolf was granted intermittent medical leave with full pay. Indeed, all of Woolf's requests for medical leave were granted, as Bloomberg regularly encouraged Woolf to take medical leave to address his medical condition. However, following another low performance review and a written warning in September 2013, Woolf was fired from his job on January 10, 2014.

On September 6, 2016, Woolf filed the instant suit alleging various claims of discrimination and retaliation under federal and

---

[9] *Id.* at 573.

[10] *Id.*

New York state law, including that Bloomberg had violated the ADA by failing to provide Woolf with a reasonable accommodation and by firing him. As relevant here, Woolf and Bloomberg cross-moved for summary judgment on Woolf's ADA claims. On March 5, 2019, the District Court denied Woolf's motion for partial summary judgment and granted Bloomberg's cross-motion for summary judgment. The District Court held that, based on Woolf's own admission that he was able to do the exact same job he had been doing if managed by different supervisors, "no reasonable trier of fact could conclude that he . . . was disabled under the ADA."[11]

On March 8, 2019, the District Court entered final judgment in favor of Bloomberg on all claims and dismissed the case. This appeal followed.

## II.   DISCUSSION

On appeal, Woolf challenges the District Court's conclusion that he is not disabled for purposes of the ADA. Specifically, Woolf argues that his serious migraine condition, which was triggered by work-related stress, substantially limited his major life activities of: (1) working; and (2) seeing, speaking, and concentrating. We only address here Woolf's claim that his migraines substantially limited his ability

---

[11] *Woolf*, 2019 WL 1046656, at *11.

to work.[12] We review Woolf's challenge to the District Court's "grant of summary judgment *de novo*, resolving all ambiguities and drawing all reasonable inferences" in his favor.[13] We will affirm a summary judgment "only if there is no genuine dispute as to any material fact and . . . the movant is entitled to judgment as a matter of law."[14]

To establish a *prima facie* case of discrimination under the ADA, a plaintiff must show by a preponderance of the evidence that: (1) his employer is subject to the ADA; (2) he was disabled within the meaning of the ADA; (3) he was otherwise qualified to perform the essential functions of his job, with or without reasonable accommodation; and (4) he suffered adverse employment action because of his disability.[15] Similarly, to establish a *prima facie* case for failure to provide a reasonable accommodation, a plaintiff also must satisfy the first three factors, but for the fourth factor, he must show by a preponderance of the evidence that his employer refused to make a reasonable accommodation.[16] The ADA defines "disability" to include,

---

[12] Woolf's argument that the migraines affected his major life activities of seeing, speaking, and concentrating are addressed in the summary order filed simultaneously herewith.

[13] *Pippins v. KPMG, LLP*, 759 F.3d 235, 239 (2d Cir. 2014) (internal quotation marks and citation omitted).

[14] *Id.* (internal quotation marks and citations omitted).

[15] *See Sista v. CDC Ixis N. Am., Inc.*, 445 F.3d 161, 169 (2d Cir. 2006) (involving a discriminatory-termination claim under the ADA).

[16] *See McMillan v. City of New York*, 711 F.3d 120, 126 (2d Cir. 2013) (involving a failure-to-accommodate claim under the ADA).

among other things, "a physical or mental impairment that substantially limits one or more major life activities."[17]

Bloomberg does not dispute that Woolf's serious migraine condition constitutes a "physical or mental impairment."[18] As a result, Woolf asks us to determine whether his migraine condition "substantially limit[ed] one or more major life activities,"[19] such as seeing, speaking, reading, concentrating, thinking, communicating, and working.[20] As stated above, here we address only Woolf's contention that his migraines substantially limited his major life activity of working.

Although Woolf's migraines arguably affected his performance at work, Woolf's own admissions make clear that the migraines were related to the stress caused by working under his direct supervisors.[21] The record amply demonstrates that Woolf believed he could perform

---

[17] 42 U.S.C. § 12102(1)(A).

[18] *Id.*

[19] *Id.*

[20] *See id.* § 12102(2) (listing examples of major life activities).

[21] *See, e.g.,* Joint App'x at 86–87, 252–56, 312, 319, 515, 725 (Woolf's complaints about how his supervisors were causing him stress and affecting his health); *id.* at 570–74, 597 (letters from Woolf's neurologist stating that "emotional stress at work" was the "primary trigger" of Woolf's migraines and that Woolf needed to "change his current work environment" "to reduce his stress levels").

the same job if he were transferred to a different location or if he were managed by different supervisors.[22]

Woolf's argument that his condition could be accommodated with a reassignment or transfer conflates two separate inquiries: on the one hand, whether the employee has a disability in the first instance and, on the other hand, whether the employee can perform the job with a reasonable accommodation. As the District Court correctly concluded, under this Court's precedent, "where a plaintiff's condition leaves him unable to perform only a single, specific job, 'he has failed to establish a substantial impairment to his major life activity of working.'"[23] That is this case.

Woolf has pointed out, however, that our precedential decisions on this issue, as well as most cases cited by the District Court, predate Congress's 2008 amendments to the ADA. In those amendments, the ADAAA, Congress instructed courts that the "definition of disability . . . shall be construed in favor of broad coverage of individuals,"[24] and that an impairment that "substantially limits one major life activity

---

[22] *See, e.g.*, Joint App'x at 312–13, 319–21, 2287 (Woolf's confirmation that he could perform his same job under different managers, in a situation where his work would be appreciated, and he would not be subjected to manufactured stress).

[23] *Woolf*, 2019 WL 1046656, at *10 (quoting *Muller v. Costello*, 187 F.3d 298, 312 (2d Cir. 1999)); *accord Cameron v. Cmty. Aid for Retarded Children, Inc.*, 335 F.3d 60, 65 (2d Cir. 2003); *Felix v. New York City Transit Auth.*, 324 F.3d 102, 107 (2d Cir. 2003).

[24] 42 U.S.C. § 12102(4)(A).

need not limit other major life activities in order to be considered a disability."[25] The principal purpose of the ADAAA was to overrule the Supreme Court's arguably narrow interpretation of what constitutes an ADA-qualifying disability set forth in *Sutton v. United Air Lines, Inc.*,[26] and *Toyota Motor Manufacturing, Kentucky, Inc. v. Williams*,[27] and to make clear that the substantial-limitation requirement in the definition of "disability" is not an exacting one.[28]

But nothing in the ADAAA's text, or its legislative history for that matter, suggests that Congress intended to modify, let alone abandon altogether, the well-established understanding that an employee's "inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working."[29] This longstanding, common-sense principle of law recognizes that employees who are precluded only from doing their specific job, or from working under a specific supervisor, do not have a "disability." Rather, an employee alleging a substantial limitation in

---

[25] *Id.* § 12102(4)(C).

[26] 527 U.S. 471 (1999).

[27] 534 U.S. 184 (2002).

[28] *See* ADAAA of 2008, Pub. L. No. 110–325, § 2(b), 122 Stat. 3553, 3554 (2008).

[29] *Cameron*, 335 F.3d at 65.

the major life activity of working must show that the limitation affects the ability to "perform a *class . . . or broad range of jobs*."[30]

Had Congress intended to change this fundamental principle of law in the ADA's regulatory scheme, Congress could have done so. Indeed, Congress "does not alter the fundamental details of a regulatory scheme in vague terms or ancillary provisions—it does not, one might say, hide elephants in mouseholes."[31] We decline to read a limitation into the statute that was so clearly not enacted by Congress.[32]

Even after the ADAAA's enactment in 2008, we have continued to hold, in non-precedential summary orders, that an impairment does not rise to the level of a "disability" if it only impairs the employee's ability to perform his or her current job.[33] District courts in this Circuit

---

[30] 29 C.F.R. § 1630, App. (2016) (emphasis added).

[31] *Whitman v. Am. Trucking Assocs.*, 531 U.S. 457, 468 (2001) (citations omitted).

[32] *See Dean v. United States*, 556 U.S. 568, 572 (2009) ("[W]e ordinarily resist[ ] reading words or elements into a statute that do not appear on its face" (quoting *Bates v. United States*, 522 U.S. 23, 29, (1997))).

[33] *See, e.g.*, *Mazzeo v. Mnuchin*, 751 F. App'x 13, 15 (2d Cir. 2018) (summary order); *Chang v. MetroPlus Health Plan*, 590 F. App'x 74, 75 (2d Cir. 2015) (summary order) (adopting the analysis of the district court's memorandum and order by reference); *Price v. Mount Sinai Hosp.*, 458 F. App'x 49, 51–52 (2d Cir. 2012) (summary order) (holding that limitations on plaintiff's ability to perform her particular job were "insufficient to satisfy the ADA's disability," but referring to pre-ADAAA law).

have followed suit,[34] and the Equal Employment Opportunity Commission's most recent interpretive guidance on this subject has reinforced that ongoing understanding of the ADA's definition of disability.[35] Finally, every Circuit that has addressed this question in the aftermath of the ADAAA also has held that Congress's amendments did not change the fact that "a plaintiff alleging a work-related disability must show that his condition precludes him from working in a *class or broad range of jobs*."[36]

Accordingly, we join our sister Circuits in holding that the ADAAA did not alter or erode our well-settled understanding that the inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working. As relevant here, because Woolf does not attempt to show that his work-induced

---

[34] *See, e.g.*, *Chang v. MetroPlus Health Plan*, No. 12-cv-3181 (WHP), 2014 WL 842635, at *6 (S.D.N.Y. Mar. 4, 2014); *Davitt v. Rockland Cty. Dep't of Mental Health*, No. 10-cv-2919 (FPS), 2013 WL 1091982, at *6 (S.D.N.Y. Mar. 15, 2013).

[35] 29 C.F.R. § 1630, App. (2016) ("Demonstrating a substantial limitation in performing the unique aspects of a single specific job is not sufficient to establish that a person is substantially limited in the major life activity of working.").

[36] *Booth v. Nissan N. Am., Inc.*, 927 F.3d 387, 394 (6th Cir. 2019) (emphasis added); *see also Mancini v. City of Providence by & through Lombardi*, 909 F.3d 32, 42 n.6 (1st Cir. 2018); *Nurriddin v. Bolden*, 818 F.3d 751, 756 (D.C. Cir. 2016) (involving a claim under Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794(a), which incorporates the ADA's definition of "individual with a disability"); *Carothers v. Cty. of Cook*, 808 F.3d 1140, 1147 (7th Cir. 2015); *Allen v. SouthCrest Hosp.*, 455 F. App'x 827, 835 (10th Cir. 2011) (summary order) (noting that the "order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel" and "may be cited . . . for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1").

impairment substantially limited his ability to work in a class or broad range of jobs, no reasonable factfinder could conclude that Woolf has a "disability" within the meaning of the ADA.

### III. CONCLUSION

For the foregoing reasons, the District Court's March 8, 2019 judgment is **AFFIRMED**.