*Freeman v. Kirisits*

## UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

### SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 11th day of June, two thousand twenty.

PRESENT:  RICHARD J. SULLIVAN,
                MICHAEL H. PARK,
                WILLIAM J. NARDINI,
                  *Circuit Judges*.

-----------------------------------------------------------------

DWAYNE FREEMAN,

        *Plaintiff-Appellant*,

      v.                             No. 18-3218

CHRISTOPHER KIRISITS, in his individual capacity, PHIL GRIFFIN, in his individual capacity, COLOMBA MISSERITTI, in his individual capacity, DOUG LEE, in his individual capacity, LINDA GRAY, in her individual capacity, LIDIA COLAK, in her individual capacity, ROCHESTER PSYCHIATRIC CENTER,

CYNTHIA CROWELL, in her individual capacity, THOMAS RINALDO, ANDREW M. CUOMO, in his individual capacity, JOHN BURROWS, in his individual capacity, MATTHEW MATNEY, in his individual capacity, VICKY EUDELL, in her official capacity, NEW YORK STATE OFFICE OF MENTAL HEALTH ("OMH"),

*Defendants-Appellees*,

LISE G. GELERNTER,

*Respondent-Appellee*.\*

-------------------------------------------------------------------

FOR PLAINTIFF-APPELLANT: VALDI LICUL, Wigdor LLP, New York, NY (Yannick A. Grant, *on the brief*, Vladeck, Raskin & Clark P.C., New York, NY).

FOR DEFENDANTS-APPELLEES: LAURA ETLINGER, Assistant Solicitor General (Barbara D. Underwood, Solicitor General, Andrew Oser, Assistant Solicitor General, *on the brief*), *for* Letitia James, Attorney General, State of New York, Albany, NY.

FOR RESPONDENT-APPELLEE: NICHOLAS A. ROMANO, Connors LLP, Buffalo, NY.

Appeal from a judgment of the United States District Court for the Western District of New York (Michael A. Telesca, *J.*).

---

\* The Clerk of the Court is respectfully directed to amend the caption as set forth above.

2

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Plaintiff-Appellant Dwayne Freeman appeals from orders of the district court (Telesca, *J.*) dismissing his discrimination and due process claims against his former employer, the Rochester Psychiatric Center ("RPC"), the New York State Office of Mental Health ("OMH"), and various employees of RPC and OMH.  In addition, Freeman appeals a decision of the magistrate judge (Payson, *Mag.*) denying his motion to compel production of an audio recording of his termination hearing.  We assume the parties' familiarity with the underlying facts and the record of prior proceedings, to which we refer only as necessary to explain our decision to affirm.

## I.    Notice of Appeal

As a preliminary matter, Defendants argue that this Court lacks jurisdiction to address Freeman's due process and equal protection claims because his notice of appeal was expressly limited to four specific questions not relevant to those claims.  We disagree.

A notice of appeal must "designate the judgment, order, or part thereof

3

being appealed." Fed. R. App. P. 3(c)(1)(B). "[I]t is well settled that courts should apply a liberal interpretation to that requirement," particularly with respect to "a notice of appeal filed by a *pro se* litigant." *Elliott v. City of Hartford*, 823 F.3d 170, 172 (2d Cir. 2016) (internal quotation marks omitted). So long as a "*pro se* party's notice of appeal evinces an intent to appeal an order or judgment of the district court and appellee has not been prejudiced or misled," technical defects "will not bar appellate jurisdiction." *Id.* at 172–73 (internal quotation marks omitted); *see also Phelps v. Kapnolas,* 123 F.3d 91, 93 (2d Cir. 1997) (construing *pro se* notice of appeal of final disposition to create jurisdiction over earlier orders).

Freeman's notice of appeal stated his intent to appeal from "the final judgment" as well as orders relevant to his due process and equal protection claims. App'x at 885–86. And while the notice also included four specific "questions of [l]aw," three of which Freeman did not ultimately pursue, it never suggested that the list was exhaustive or that his appeal was limited to those questions. *Id.* at 886. Construing the notice liberally, we are satisfied that Freeman adequately conveyed his intent to appeal the judgment and orders of the district court, and we are aware of no prejudice suffered by Defendants as a result of the notice that was filed. Accordingly, we conclude that we have jurisdiction over

4

Freeman's challenges to the final judgment and the orders dismissing his claims that are subsumed in that judgment.

## II.    Dismissal for Failure to State a Claim

We review *de novo* a district court's grant of a motion to dismiss for failure to state a claim.  *Littlejohn v. City of New York*, 795 F.3d 297, 306 (2d Cir. 2015).  A complaint must plead "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is plausible when the pleaded facts "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Though the Court must accept factual allegations as true, "mere conclusory statements" and legal conclusions "are not entitled to the assumption of truth."  *Id.* at 678–79.  Applying these principles, we find that Freeman fails to state a plausible claim to relief for violations of his procedural due process rights, the Rehabilitation Act, and the Equal Protection Clause.

### A. Procedural Due Process

Freeman's allegations do not plausibly allege a procedural due process claim, either in connection with his first unpaid suspension or his second unpaid suspension and full arbitration hearing.  Freeman argues that because Defendants

5

acted pursuant to "state procedures, rather than random acts, the availability of post-deprivation procedures will not, ipso facto, satisfy due process." Freeman Br. at 52 (brackets and internal quotation marks omitted). Even assuming – without deciding – that Freeman's characterization is correct, his claim fails. "Due process does not, in all cases, require a hearing before the state *interferes* with a protected interest, so long as some form of hearing is provided before an individual is finally deprived of the property interest." *Nnebe v. Daus*, 644 F.3d 147, 158 (2d Cir. 2011) (brackets and internal quotation marks omitted). The balancing test established in *Mathews v. Eldridge*, 424 U.S. 319 (1976) – under which we weigh the private interest, the risk of erroneous deprivation, and the government's interest – provides guidance as to whether a pre-deprivation hearing is required and generally "what kind of procedure is due." *Nnebe*, 644 F.3d at 158 (internal quotation marks omitted).

As to Freeman's first suspension, these factors favor Defendants, even if we assume the strength of Freeman's private interest in his salary. The government's interest in avoiding significant interference with the operations of a mental health facility, which directly impacts the health and safety of patients, is obviously high. Further, the risk of erroneous deprivation of a temporary suspension is mitigated

by Freeman's right to a full hearing under his collective bargaining agreement and the possibility of back pay. *See id. at* 159. We thus find that, "insofar as the post-suspension hearing affords adequate process, no pre-suspension hearing is required." *Id.*

Given that Freeman was contractually entitled to proceed to a full hearing but instead chose to return to work rather than remain on unpaid suspension pending a full hearing, it cannot be seriously argued that he was deprived of adequate process. *Cf. Costello v. Town of Fairfield*, 811 F.2d 782, 784 (2d Cir. 1987) (rejecting "[a]t this time" "appellants' argument that the grievance procedure is an ineffective post-deprivation remedy" where appellants "did not avail themselves of the grievance procedure" that allowed them to "pursue their claim . . . culminating in binding arbitration"); *id.* at 787 (Van Graafeiland, *J.,* concurring) ("Appellants cannot establish the insufficiency of grievance procedures simply by refusing to utilize them."). Nor does Freeman plead any non-conclusory facts that could plausibly support a finding that he unknowingly or involuntarily waived his rights under the collective bargaining agreement. Accordingly, Freeman fails to state a claim that he was deprived of due process in connection with his first unpaid suspension.

Freeman fares no better with respect to the second suspension. As an initial matter, we note that before being placed on unpaid suspension, Freeman was put on paid administrative leave pending an investigation. Freeman thus had notice that he could soon be disciplined for violating RPC's insubordination policy. Indeed, during that leave, Freeman sent one of the individual Defendants a typed document outlining factors Freeman believed Defendants should consider during the investigation. Freeman emphasized that RPC's insubordination policy allowed employees to refuse orders that constituted threats to health or safety, and claimed that Defendants violated his constitutional rights. Though Freeman had not yet received the notice of discipline leading to his termination, the fact that he sent such a letter suggests that he had some opportunity to respond "in writing, why [the likely] proposed action [of additional unpaid suspension or termination] should not be taken." *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 546 (1985).

In any event, even if Freeman lacked notice and opportunity to be heard before his leave turned into unpaid suspension, he timely grieved and requested – and received – a full evidentiary hearing. To argue that such post-deprivation process was inadequate, Freeman alleges only that the hearing was delayed and that Defendants lied at the hearing. A complaint that "merely recites the course

8

of proceedings and concludes that the denial of a 'speedy resolution' violated due process" fails to state a claim of constitutional deprivation. *Id.* at 547. Similarly, Freeman's bare assertions that Defendants lied under oath about the conditions in the geriatric unit ("E1") or other matters in dispute are unsupported by any specific facts. They are merely "conclusory allegations or legal conclusions masquerading as factual conclusions," which are insufficient to defeat a motion to dismiss. *Siegel v. HSBC N. Am. Holdings, Inc.*, 933 F.3d 217, 222 (2d Cir. 2019) (internal quotation marks omitted). Accordingly, we affirm the district court's dismissal of Freeman's due process claims.

### B. Rehabilitation Act

Freeman next argues that the district court erred in dismissing his claims against RPC and OMH for failure to provide a reasonable accommodation under the Rehabilitation Act. Because Freeman fails to plausibly allege that he has a disability within the meaning of the Act, we affirm the district court's dismissal.

In considering a Rehabilitation Act claim based on an employer's alleged failure to accommodate a disability, we examine, among other things, whether a plaintiff sufficiently pleads facts that plausibly support that "the plaintiff is a person with a disability under the meaning of the statute in question." *Costabile v.*

*N.Y.C. Health & Hosps. Corp.*, 951 F.3d 77, 81 (2d Cir. 2020) (internal quotation marks omitted). The Rehabilitation Act takes its definition of "disability" from the Americans with Disabilities Act ("ADA"). *See* 29 U.S.C. § 705(9)(B). As relevant here, the ADA defines "disability" to mean "a physical or mental impairment that substantially limits one or more major life activities of such individual." 42 U.S.C. § 12102(1)(A).

Freeman's allegations do not suggest that he is substantially limited in engaging in either the major life activity of "working" or the major life activity of "concentrating [and] thinking." *Id.* § 12102(2)(A). "To be substantially limited in the major life activity of working . . . one must be precluded from more than one type of job, a specialized job, or a particular job of choice." *Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 492 (1999), *superseded on other grounds by* 42 U.S.C. § 12102(3)(A). Freeman's own complaint indicates that he was willing and able to work anywhere within RPC besides the E1 unit, and that his discussions with his therapist about his symptoms specifically centered on "the loud and noisy atmosphere on the E1 unit." App'x at 785. Accordingly, Freeman's allegations do not make plausible that he was substantially limited in the major life activity of working. *See Woolf v. Strada*, 949 F.3d 89, 94 (2d Cir. 2020) (recognizing the

10

"longstanding, common-sense principle of law . . . that employees who are precluded only from doing their specific job . . . do not have a 'disability'"); *Heilweil v. Mount Sinai Hosp.*, 32 F.3d 718, 724 (2d Cir. 1994) (finding that the plaintiff's condition did not substantially limit her ability to work when she "was medically restricted from working in only one place in the hospital").

Nor do Freeman's allegations reflect that he was substantially limited in the major life activities of concentrating and thinking. Though Freeman states in his complaint that he "was already seeking therapy because of an anxiety disorder," he alleges no facts to suggest that such disorder substantially limited or impaired his ability to think or concentrate outside the E1 unit. App'x at 785. Further, the letters from Freeman's therapist that are attached to the complaint specify only that, "[a]s a result of working with geriatric inpatients," Freeman experienced "disruptive symptoms" and that "[w]hen not working with this geriatric population," his mood was more stable. App'x at 822. Accordingly, the facts included in Freeman's complaint do not support an inference that his ability to engage in the major life activities of concentrating and thinking was restricted in more than "a limited way." *Heilweil*, 32 F.3d at 723.

Finally, we reject Freeman's argument that he qualifies as having a disability

11

because he was "regarded as having . . . an impairment" that substantially limited a major life activity. 42 U.S.C. § 12102(1)(C). Significantly, Freeman alleges that Defendants accused him of *lying* about his disorder, which undermines the assertion that Defendants regarded him as having a disability. Freeman thus fails to state any claim to relief under the "regarded as" prong.

## C. Section 1983 Claims for Rehabilitation Act Violations

Freeman argues in his opening brief that the district court erred in dismissing his § 1983 claims against individual defendants for violations of the Rehabilitation Act. In his reply, however, Freeman acknowledges that this Court's decision in *Costabile v. New York City Health & Hospitals Corp.*, which held that "the rights established in the Rehabilitation Act may not be enforced through § 1983," disposes of that claim. 951 F.3d at 83. Accordingly, we affirm the district court's dismissal of these claims.

## D. Equal Protection Clause

To survive a motion to dismiss, a plaintiff advancing an equal protection claim must "plausibly allege facts that provide at least minimal support for the proposition that the employer was motivated by discriminatory intent." *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 86–87 (2d Cir. 2015) (internal quotation

marks omitted). Freeman asserts that he received less favorable treatment than a former colleague "because of gender and other 'impermissible' reasons," in violation of the Constitution's equal protection guarantees. App'x at 804. Freeman alleges that he and that colleague were similarly situated because they both requested reasonable accommodation for "ailments that qualified [them] as disabled," but that Defendants did not suspend his colleague and reacted more favorably to her request. *Id.* at 804–05. Without more, these barebones and conclusory allegations are insufficient to support even a minimal inference that Defendants were motivated by an intent to discriminate on the basis of sex. Accordingly, we affirm the district court's dismissal of this claim.

### III.  Motion to Compel

Freeman contends that the magistrate judge should have granted his motion to compel the arbitrator to produce an audio recording of the full arbitration hearing conducted before Freeman's termination. Because we affirm the district court's dismissal of the Rehabilitation Act claim against RPC – the only claim for which the recording was requested – this issue is moot. *See Weiss v. United States*, 199 F.2d 454, 455 (2d Cir. 1952) (holding that "[d]ismissal of the complaint rendered moot the plaintiff's [discovery] motions").

13

\*　　\*　　\*

We have considered Freeman's remaining arguments and conclude that they are without merit.  For the foregoing reasons, the judgment of the district court is AFFIRMED.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court
