21-1777-cv
*Greenbaum v. N.Y.C. Transit Auth., et al.*

## UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

# <u>SUMMARY ORDER</u>

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 15th day of August, two thousand twenty-two.

PRESENT:  GERARD E. LYNCH,
　　　　　JOSEPH F. BIANCO,
　　　　　WILLIAM J. NARDINI,

　　　　　　　　*Circuit Judges*.

_____

Steven Greenbaum,

　　　*Plaintiff-Appellant*,

　　　v.                                                      21-1777

New York City Transit Authority, Metropolitan Transportation Authority Corporation, Manhattan and Bronx Surface Transit Operating Authority,

　　　*Defendants-Appellees*.

_____

FOR PLAINTIFF-APPELLANT:　　　　　Stewart Lee Karlin, Stewart Lee Karlin Law Group, PC, New York, NY.

FOR DEFENDANTS-APPELLEES:                    HELENE R. HECHTKOPF (Miriam J. Manber, *on the brief*), Hoguet Newman Regal & Kenney, LLP, New York, NY.

Appeal from the United States District Court for the Southern District of New York (Cote, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is hereby **VACATED** in part and **AFFIRMED** in part, and the action is **REMANDED** for further proceedings consistent with this order.

Plaintiff-appellant Steven Greenbaum ("Greenbaum") was employed as a Computer Specialist with the Manhattan and Bronx Surface Transit Operating Authority's ("MaBSTOA") Office of Management and Budget ("OMB"). Greenbaum, who suffers from wrist tendonitis, alleged, *inter alia*, that the MaBSTOA, the New York City Transit Authority ("NYCTA"), and the Metropolitan Transportation Authority Corporation ("MTA") (collectively, "defendants") discriminated against him on account of his disability when they terminated his employment after refusing to provide him with a reasonable accommodation for his condition, in violation of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 *et seq.* ("ADA"), the New York State Human Rights Law, N.Y. Exec. L. § 290 *et seq.* ("NYSHRL"), and the New York City Human Rights Law, N.Y.C. Admin. Code § 8-101 *et seq.* ("NYCHRL"). Greenbaum appeals from the judgment of the United States District Court for the Southern District of New York (Cote, *J.*) granting defendants' motion for summary judgment on these claims under Federal Rule of Civil Procedure 56 and denying his cross-motion for summary judgment.[1] We assume the parties'

---

[1] Greenbaum also asserted disparate treatment and hostile work environment claims. However, on appeal, Greenbaum does not challenge the district court's grant of summary judgment to defendants on those claims.

familiarity with the underlying facts and procedural history, to which we refer only as necessary to explain our decision.

We review *de novo* an order granting a motion for summary judgment. *Brooklyn Ctr. for Indep. of the Disabled v. Metro. Transp. Auth.*, 11 F.4th 55, 61 (2d Cir. 2021). Summary judgment is appropriate "only upon a showing 'that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Johnson v. Killian*, 680 F.3d 234, 236 (2d Cir. 2012) (quoting Fed. R. Civ. P. 56(a)). When deciding a motion for summary judgment, we must "resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." *Id.* (internal quotation marks and citation omitted).

Greenbaum advances three principal arguments on appeal. First, he argues that the district court erred in dismissing his ADA-based claims when it concluded that he failed to present evidence demonstrating his wrist tendonitis impairment fell within the definition of a "disability" under the ADA. Second, Greenbaum contends that the district court erred in dismissing his reasonable accommodation claims under the ADA, the NYSHRL, and the NYCHRL, after determining that the evidence in the record established that the implementation of his proposed accommodation—the installation of voice dictation software on his employer's computer systems to enable him to carry out the essential functions of his job without typing on a keyboard or clicking on a mouse—would have caused the employer an undue hardship. Finally, Greenbaum argues that material issues of fact precluded summary judgment for defendants on his separate claims that defendants failed to appropriately engage in an interactive process as required by the ADA, the NYSHRL, and the NYCHRL.

As set forth below, we conclude that the district court erred in granting summary judgment on the issue of whether Greenbaum's permanent wrist tendonitis is a disability within the meaning

3

of the ADA because, construing the evidence in the record most favorably to Greenbaum, there is sufficient evidence from which a reasonable jury could conclude that he was substantially limited in the major life activity of working. Similarly, we conclude that material issues of fact preclude summary judgment on whether the proposed accommodation would impose an undue hardship on Greenbaum's employer. Therefore, summary judgment in favor of defendants on the reasonable accommodation claims was unwarranted.[2] However, we agree with the district court's decision to grant summary judgment to defendants on Greenbaum's separate claims asserting that defendants failed to appropriately engage in an interactive process with respect to his alleged disability.

## I. "Disability" under the ADA

A person is disabled within the meaning of the ADA if he has "a physical . . . impairment that substantially limits one or more [of his] major life activities." 42 U.S.C. § 12102(1)(A). Major life activities include "caring for oneself, performing manual tasks, seeing, hearing . . . and working." *Id.* § 12102(2)(A). The "substantial-limitation requirement in the definition of 'disability' is not an exacting one." *Woolf v. Strada*, 949 F.3d 89, 94 (2d Cir. 2020) (citation omitted). When the major life activity involved is working, a plaintiff's "inability to perform a single, particular job does not constitute a substantial limitation." *Id.* (internal quotation marks omitted). Instead, a plaintiff "must show that the limitation affects the ability to perform a *class . . . or broad range of jobs*." *Id.* (quoting 29 C.F.R. § 1630, App. (2016)).

Greenbaum asserts that his tendonitis impairment was a disability under the ADA because it interfered with his major life activity of working by limiting his ability to perform a class of jobs

---

[2] To the extent Greenbaum argues that his cross-motion for summary judgment on the reasonable accommodation claims should have been granted, we conclude that the evidence submitted by defendants on those claims (summarized, in part, herein) likewise precludes summary judgment in Greenbaum's favor on such claims.

including "computer programming, or any job that requires extensive computer use." Appellant's Br. at 54. The district court concluded otherwise, holding that Greenbaum "has not offered evidence to raise a question of fact that his tendonitis prevents him from working in a broad class of jobs." *Greenbaum v. N.Y.C. Transit Auth.*, No. 20CV771 (DLC), 2021 WL 2650509, at *5 (S.D.N.Y. June 25, 2021). We disagree.

Greenbaum offered evidence that, after he began suffering from wrist pains, his physician ultimately restricted him, in November 2018, to 30 minutes of typing or clicking at a time, for a total of four hours a day—an assessment that was later confirmed by his employer's medical staff. As a result of these limitations, which Greenbaum's employer admitted substantially interfered with his job duties at OMB, he was placed on leave until such time that he was fit to return to duty or a reasonable accommodation was found. Greenbaum's employment status was initially changed to "Restricted Work Temporary" and then to "Restricted Work Permanent" to reflect the indefinite duration of his disability. App'x at 772. In addition, Greenbaum submitted evidence that, when he has a tendonitis flare-up, the pain from his permanent condition is magnified and he is not permitted to do any typing or mouse-clicking.

When viewed in the light most favorable to Greenbaum, this evidence creates a genuine issue of fact as to whether this impairment affected his ability to perform not just a particular computer programming job, but rather a class of jobs involving use of a keyboard or mouse for periods of time beyond the limitations he experienced. *See Bartlett v. N.Y. State Bd. of Law Exam'rs*, 226 F.3d 69, 83 (2d Cir. 2000) ("With respect to 'a class of jobs,' a court must consider '[t]he job from which the individual has been disqualified because of an impairment, and the number and types of jobs utilizing similar training, knowledge, skills or abilities.'") (quoting 29 C.F.R. § 1630.2(j)(3)(ii)(B)); *see also Williams v. Philadelphia Hous. Auth. Police Dep't*, 380 F.3d

751, 764 (3d Cir. 2004) (citing to a 1992 U.S. Equal Employment Opportunity Commission's Technical Assistance Manual that references an example of a computer programmer who develops a vision impairment that "'prevents her from working as a computer operator, programmer, instructor, or systems analyst'" as being "'substantially limited in working, because her impairment prevents her from working in the class of jobs requiring use of a computer'"), *superseded by statute on other grounds*, ADA Amendments Act of 2008, Pub. L. No. 110-325, § 6, 122 Stat. 3553, 3557–58.

Accordingly, because a triable question of fact precluding summary judgment exists on whether Greenbaum has a "disability" within the meaning of the ADA, the district court erred in granting summary judgment for defendants on this ground on the ADA-based claims.[3]

## II.     Failure to Accommodate Claim

We further conclude that the district court erred in granting summary judgment on the failure to accommodate claims under the ADA, the NYSHRL, and the NYCHRL because of an undue hardship on the employer from the proposed accommodation.

To establish a failure to accommodate claim under the ADA, a plaintiff employee must show that: "(1) [the employee] is a person with a disability under the meaning of the ADA; (2) an employer covered by the statute had notice of his disability; (3) with reasonable accommodation, [the employee] could perform the essential functions of the job at issue; and (4)

---

[3] We also reject defendants' passing argument that we should affirm on the alternative grounds that Greenbaum's ADA claim was untimely, and that Greenbaum should be barred from relying on evidence that was not produced earlier in the discovery process to demonstrate the timeliness of his ADA claim. *See* Appellees' Br. at 27–28. "Where a theory has been briefed and argued only cursorily in this Court, it is our preferred practice to remand the issue for consideration by the district court in the first instance." *Cmty. Health Ctr. v. Wilson-Coker*, 311 F.3d 132, 139 (2d Cir. 2002) (internal quotation marks and citation omitted). To the extent there is some factual dispute at to whether Greenbaum's ADA claim was timely, we leave it for the district court to consider on remand.

the employer has refused to make such accommodations." *McBride v. BIC Consumer Prods. Mfg. Co.*, 583 F.3d 92, 96–97 (2d Cir. 2009) (internal quotation marks omitted). However, a defendant employer is not required to accommodate an employee's disability if the proposed accommodation is unreasonable or would impose an undue hardship on the employer. *Jackan v. N.Y. State Dep't of Lab.*, 205 F.3d 562, 566 (2d Cir. 2000). The NYSHRL and the NYCHRL also do not require an employer to provide an accommodation if it would cause an undue hardship for an employer. *See Jacobsen v. N.Y.C. Health & Hosps. Corp.*, 22 N.Y.3d 824, 835 (2014); N.Y. Exec. L. § 292(21-e); N.Y.C. Admin. Code § 8-102(18).

This Court follows a "two-step process to evaluate whether the failure to provide a proposed accommodation constitutes a violation of the ADA." *Jackan*, 205 F.3d at 566. A plaintiff bears the initial "burdens of both production and persuasion as to the existence of some accommodation that would allow [him] to perform the essential functions of [his] employment." *McBride*, 583 F.3d at 97. A reasonable accommodation may include, for example, the "acquisition or modification of equipment or devices . . . and other similar accommodations for individuals with disabilities." 42 U.S.C § 12111(9)(B).

Greenbaum has met this initial burden, as the record evidence supports his claim that the three voice dictation software programs, which he proposed as an accommodation, would have allowed him to perform the essential functions of his job. Specifically, Greenbaum presented evidence that he identified, procured, and successfully tested at least two of the three proposed software—Dragon Naturally Speaking ("Dragon") and VoiceComputer—on his laptop computer at home and on various programs he used in the office, and that these software programs enabled him to carry out his programming duties without the need for clicking or typing. In addition, Greenbaum relies on the report of Patricia Enriquez, an expert in the field of assistive technology

7

services, in further support of his contention that the requested accommodation is reasonable. Enriquez's report concludes—based on her extensive prior experience assisting employers and clients in using Dragon, including installation of the program on employment sites; working with worksite information technology staff on compatibility software requirements; and handling costs, support, and other maintenance issues—that the proposed software accommodation is a viable and affordable assistive technology solution for Greenbaum and his employer. Lastly, the report concludes that the three proposed software programs are widely used across the business community and would not be difficult or expensive to acquire. In fact, one of the three proposed software programs was already used by a small number of employees in NYCTA's legal department—albeit for narrative-intensive work only and not for programming. App'x at 296. Thus, viewing this evidence in a light most favorable to Greenbaum, we hold that he has met his modest burden of proposing "the existence of a plausible accommodation, the costs of which, facially, do not clearly exceed its benefits." *Borkowski v. Valley Cent. Sch. Dist.*, 63 F.3d 131, 138 (2d Cir. 1995).

Once a plaintiff "has made out a *prima facie* showing that a reasonable accommodation is available," *id.*, the burden then shifts to the defendant to show that the requested accommodation is unreasonable or would impose an undue hardship on the employer, *Jackan*, 205 F.3d at 566; *see also Borkowski*, 63 F.3d at 138 (explaining that, at this stage, a defendant's "burden of persuading the factfinder that the plaintiff's proposed accommodation is unreasonable merges, in effect, with its burden of showing, as an affirmative defense, that the proposed accommodation would cause it to suffer an undue hardship"). An undue hardship is defined as "an action requiring significant difficulty or expense." 42 U.S.C. § 12111(10)(A). Factors to be considered by the employer in determining whether an accommodation would impose an undue hardship may include:

(i) the nature and cost of the accommodation . . . ; (ii). . . the number of persons employed at [the] facility [involved]; the effect on expenses and resources, or the impact otherwise of such accommodation upon the operation of the facility; (iii) . . . the overall size of the business of a covered entity with respect to the number of its employees; and (iv) . . . the composition, structure, and functions of the workforce of such entity.

*Id.* § 12111(10)(B). In sum, an employer seeking to meet its burden of persuasion must evaluate the "hardship sought to be imposed through the lens of the factors listed in the regulations," *Borkowski*, 63 F.3d at 139, and "show special (typically case-specific) circumstances demonstrating undue hardship in the particular circumstances," *US Airways, Inc. v. Barnett*, 535 U.S. 391, 402 (2002).

We conclude that the "undue hardship" issue cannot be decided on summary judgment with respect to the reasonable accommodation claims on this record.[4] To be sure, in an effort to demonstrate that the accommodation was not reasonably feasible, defendants submitted email exchanges and testimony by staff within OMB, including information technology personnel, expressing concerns about the compatibility of the proposed software with defendants' current computer systems—a problem defendants asserted would be compounded because OMB is a small department with limited resources, and further, that any necessary technical support would likely need to be provided by Greenbaum's immediate supervisor or manager, rather than the information technology department which lacked the requisite expertise on such software. Moreover, defendants fault Greenbaum's assistive technology expert for failing to independently test the

---

[4] Unlike federal law, the NYSHRL does not place the burden on the employer to demonstrate an undue hardship, but rather requires the employee to show that the proposed accommodation is reasonable and would not cause the employer an undue hardship. *See* N.Y. Exec. Law § 292 (21-e); *Jacobsen*, 22 N.Y.3d at 834–35. On the other hand, the NYCHRL "places the burden on the employer to show the unavailability of any safe and reasonable accommodation and to show that any proposed accommodation would place an undue hardship on its business." *Jacobsen*, 22 N.Y.3d at 835; N.Y.C. Admin. Code § 8-102(18). In any event, regardless of who carries the burden, we conclude that summary judgment is unwarranted for either side based upon the factual disputes in the evidentiary record.

proposed software. In addition, defendants contend that any conclusions reached by Greenbaum's expert about the feasibility of the proposed software were based entirely on Greenbaum's own representations to her that the software would work, as well as on unedited product information and descriptions that appear to have been copied and reproduced from software websites and other related promotional materials.

Even though defendants now ask "this Court [to] disregard Enriquez's declaration altogether, because it is not the product of 'reliable principles and methods,'" Appellees' Br. at 41 (quoting Fed. R. Evid. 702(c)), defendants did not challenge the reliability of plaintiff's expert by filing a motion to strike such evidence pursuant to Rule 702(c) or *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), nor did the district court exclude (or even address) that expert evidence in its summary judgment determination. *Cf. Raskin v. Wyatt Co.*, 125 F.3d 55, 65–68 (2d Cir. 1997) (affirming district court's exclusion of expert testimony and grant of summary judgment where such testimony was found to be inadmissible). In short, defendants have failed to provide a sufficient basis for this Court to simply disregard Greenbaum's expert report in assessing Greenbaum's evidence on the issue of undue hardship. In any event, Greenbaum offered other evidence to support his reasonable accommodation claims, including an email from defendants' Head of Emergent Technology stating that, with respect to one of the software programs proposed by Greenbaum, the "[s]implest approach would be to buy a copy, install it and give it a try." App'x at 817. Although defendants assert that subsequent considerations militated against testing the proposed software programs on Greenbaum's work computer after Greenbaum successfully tested the programs at home, counsel for defendants conceded at oral argument that there was no evidence in the record of a concern that a system-wide breakdown, or some analogous damage to the computer system, could result by such a test

10

on Greenbaum's work computer. In short, Greenbaum's expert evidence, combined with the other evidence such as the successful testing of the proposed accommodation on the computer in Greenbaum's home, is sufficient to raise a genuine issue of material fact as to whether his requested accommodation would impose an undue hardship on defendants. Accordingly, we conclude that the district court erred when it granted summary judgment to defendants on Greenbaum's reasonable accommodation claims under the ADA, the NYSHRL, and the NYCHRL.

### III.     Interactive Process Claim

Greenbaum also asserts separate claims based on defendants' alleged failure to engage in an appropriate interactive process with him, in violation of the ADA, the NYSHRL, and the NYCHRL. We conclude that the district court properly determined that summary judgment was warranted on these claims in defendants' favor.

In workplaces where employees are disabled or are regarded as disabled by employers, "the ADA contemplates that employers will engage in 'an "interactive process" [with their employees and in that way] work together to assess whether an employee's disability can be reasonably accommodated.'" *Brady v. Wal-Mart Stores, Inc.*, 531 F.3d 127, 135 (2d Cir. 2008) (quoting *Jackan*, 205 F.3d at 566) (alterations in original). Similarly, the NYSHRL "makes a dialogue about the reasonableness of the employee's proposed accommodation relevant to the 'reasonable accommodation' analysis." *Jacobsen*, 22 N.Y.3d at 836. However, there is no independent cause of action under the ADA or the NYSHRL for a failure to properly engage in the interactive process, nor is that issue necessarily dispositive as to a reasonable accommodation claim. *See, e.g.*, *McElwee v. County of Orange*, 700 F.3d 635, 642 (2d Cir. 2012) ("[A]n employee may not recover based on his employer's failure to engage in an interactive process if he cannot

11

show that a reasonable accommodation existed at the time of his dismissal."); *Jacobsen*, 22 N.Y.3d at 838 ("[T]he employer's decision to engage in or forgo an interactive process is but one factor to be considered in deciding whether a reasonable accommodation was available for the employee's disability at the time the employee sought accommodation.").

We do recognize, in contrast to federal and New York State law, that a failure to engage in the interactive process is independently actionable as a separate claim under the NYCHRL, which provides that "[i]t shall be an unlawful discriminatory practice for an employer . . . to refuse or otherwise fail to engage in a cooperative dialogue within a reasonable time with a person who has requested an accommodation or who the [employer] has notice may require such an accommodation . . . [r]elated to a disability." N.Y.C. Admin. Code § 8-107(28)(a); *see also Hosking v. Mem'l Sloan-Kettering Cancer Ctr.*, 186 A.D.3d 58, 64–65 (1st Dep't 2020) (explaining that Section 8-107(28)(a) modified *Jacobsen* under the NYCHRL). Here, however, there is insufficient evidence from which a rational jury could find that defendants failed to engage in an interactive process.

Greenbaum engaged in an extensive interactive process with OMB over a period of many months, including three separate meetings between the Office of ADA Compliance, Greenbaum, and his supervisors, as well as email correspondence between those meetings. Greenbaum's assertion that defendants "waited a year" to respond to his request for an accommodation has no support in the record. Appellant's Br. at 48. As the district court explained, the uncontroverted evidence in the record demonstrated the following:

> These discussions began immediately after Greenbaum reported his wrist problems in the summer of 2018. Greenbaum's supervisors initiated the dialogue by offering him the appropriate form, delivered him the requested ergonomic keyboard, considered his doctor's diagnosis, conducted their own medical examination, invited him to propose solutions, and met with him. It was only after a meeting in January 2019 that Greenbaum identified two software solutions. In May of 2019,

12

> Greenbaum identified a third piece of software and delivered a ten-page defense of his proposal. In August of 2019, MaBSTOA issued the Denial Letter. Given the complexity of the proposed accommodation and Greenbaum's own delays in presenting his requests, the Defendants have shown that MaBSTOA actively and diligently engaged with Greenbaum regarding his request for an accommodation.

*Greenbaum*, 2021 WL 2650509, at *9. As the district court noted, any delays in the interactive process were attributable to Greenbaum's delay in providing necessary documentation or information in order for defendants to properly evaluate his accommodation request.

In sum, the uncontroverted evidence established that defendants had initiated a good faith interactive process by engaging with plaintiff for nearly a year to ascertain the feasibility of his proposed accommodation. *See Romanello v. Intesa Sanpaolo S.p.A.*, 97 A.D.3d 449, 451 (1st Dep't 2012), *aff'd as modified*, 22 N.Y.3d 881 (2013) (finding the undisputed documentary evidence demonstrated that the employer attempted to engage in a good faith interactive process); *see also Vinikoff v. N.Y. State Div. of Hum. Rts.*, 83 A.D.3d 1159, 1164 (3d Dep't 2011) (finding that an employer had engaged in a good faith interactive process where "substantial evidence support[ed] [a] determination that [defendants] made reasonable efforts to both communicate with [plaintiff] and consider accommodations based on the information it possessed"). Accordingly, the district court properly granted summary judgment in defendants' favor on Greenbaum's separate interactive process claims.

\*          \*          \*

We have reviewed the parties' remaining arguments and conclude that they are without merit. For the foregoing reasons, we **VACATE** the judgment of the district court in part, **AFFIRM** in part, and **REMAND** the action for further proceedings consistent with this order.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

13